## UNITED STATES FIDELITY & GUARANTY CO. v. CASSELL et al. (No. 1973.)*

(Court of Civil Appeals of Texas. Amarillo. May 24, 1922. Rehearing Denied June 28, 1922.)

Master and servant &lArr;373—Injury in horseplay held not compensable.

An injury to an employee of a theater which was the result of a frolic, or horseplay, between the injured party and other parties and employees, whereby a pistol was accidentally discharged, causing the injury, the pistol not being used in, nor having anything to do or connected with, the business of the employer, held not within the Workmen's Compensation Act.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by L. P. Cassell and others against the United States Fidelity & Guaranty Company. From judgment for plaintiffs, defendant appeals. Reversed and rendered.

Seay, Seay, Malone & Lipscomb, of Dallas, for appellant.

M. M. Parks and E. E. Clack, both of Dallas, for appellees.

HALL, J. This was a suit to recover compensation under the Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.) for an alleged accident which occurred to Cassell, as an employee of the Wichita Theater Company. The appellant company defended upon the ground that

the injuries complained of did not have to do with and originate in the business, trade, or profession of the employer, and were not received by Cassell while engaged in or about the furtherance of the affairs of his employer, but were the result of a frolic, horseplay, or other amusement by and between the injured party and other parties and employees by pranking or fooling with a pistol which was accidentally discharged, causing the injuries; that said pistol was not used in nor had anything to do with the business of the employer, and was not connected in any way with the business of the plaintiff's employer. Upon a trial to the court without a jury the court rendered judgment against the appellant. The findings of fact material to the issues to be considered are as follows:

"(8) I find that on October 9, 1920, and prior thereto, one Walter Crosby was manager of the Wichita Theater Company, and had supervision over the entire work; that the said Walter Crosby had authority to issue orders to the employees; that he had authority to employ and discharge employees and to do anything necessary to the conduct of the business.

"(9) I find that on the said October 9, 1920, and prior thereto, the said W. C. Shaver was 22 years of age, and was manager of the stage of the Wichita Theater Company, and as such had immediate supervision, direction, and command over the employees of the said stage, including the plaintiff, L. P. Cassell, who was a stage employee. I further find that the said Shaver had authority to issue such orders to the stage employees as were necessary to the conduct of the business, and to employ and discharge the plaintiff, L. P. Cassell. I further find that the said W. C. Shaver, as such stage manager of the Wichita Theater Company, employed the plaintiff Cassell. I further find that as to all other employees the said Shaver had authority to employ and discharge them with the approval of the said Walter Crosby.

"(10) I find that on October 9, 1920, and prior thereto, the said Walter Crosby and W. C. Shaver required and permitted pistols and other firearms to be kept on and about the stage of the Wichita Theater Company, to be used when needed in certain acts of the theater; that the said pistols so kept were sometimes fired to create an atmosphere for an act which was going on, and when a pistol was so fired off the stage the said Shaver sometimes fired it; that said pistols were handled by employees of the Wichita Theater Company, which employees had at all times access to them.

"(11) I further find that at the time of the accident to Cassell the said Cassell was in the course of his employment and in the discharge of his duties as a stage employee of the Witchita Theater Company, and was in the immediate presence of and under the supervision, direction, management, and command of his superior, W. C. Shaver. I further find that Cassell had taken no part in any horseplay that was being carried on around him.

"(12) I further find that there had not existed the practice or custom among employees to snap pistols at each other, and that so far as

the records show this has never been done except on the night of the injury to Cassell and in the manner prescribed in my next finding as to how the accident occurred to Cassell, except that in the morning of the same day a girl had another pistol on the stage that nearly all of the employees had fooled with during the day. I find further that the said Walter Crosby did not have knowledge of such horseplay with pistols by the employees, and if he had had such knowledge he would have probably called them down.

"(13) I find that Cassell received the pistol wounds which occasioned the injury herein about 11:30 Saturday night, October 9th; the pistol belonging to and was the personal property of W. C. Shaver, and was not being used by said Shaver in any manner connected with his duties as employee. I find that about 15 minutes prior to the time that Cassell was shot said W. C. Shaver had in fun, or as a prank, and with no intent to injure, snapped the pistol once or twice at a young lady by the name of Gossett; that between the time he snapped it at the young lady and the time Cassell was injured he snapped it two or three times at the stomach of one Weinberg. I find that this was done in fun or frolic, or as a prank. with no intent to injure the said Weinberg. I find that he snapped the pistol at Cassell three times; that the first two times the pistol snapped, and the third time the pistol exploded and the bullet struck Cassell in the back, injuring his spinal column, and causing complete paralysis from the waist down; I find that Shaver was snapping the pistol at Cassell with no intent to injure, but as a prank or play."

The court concluded as a matter of law as follows:

"That the injury to Cassell was an injury sustained in the course of his employment and of the kind and character having to do with and originating in the work, business, trade, or profession of an employer received by the employees while engaged in or about the performance of the affairs and business of the employer.

"Second. I further conclude that the said W. C. Shaver was vice principal of the Wichita Theater Company, so far as Cassell was concerned, and that notice or knowledge to Shaver that he, the said Shaver, snapped a pistol at Miss Gossett, Mr. Weinberg or Mr. Cassell, or that pistols prior to this time had been fooled with during the same day by employees of the theater Company, or used in any manner of horseplay, was notice to the Wichita Theater Company, and by virtue of such fact, and the further fact that such practice was not prohibited by the said Wichita Theater Company, injuries received from same by employees while engaged in the course of their employment became a risk incident to the employment, and that the plaintiff, L. P. Cassell, is entitled to benefits of the compensation laws, and that the insurance company should redeem its liability in a lump sum, less a discount of 5 per cent., in the manner prescribed by what is known as the New Jersey rule."

The first proposition urged by the appellant company is that—

"Under the Workmen's Compensation Law of this state the injury must not only be received by the employee while engaged in or about the furtherance of the affairs or business of his employer, but must originate in the work, business, trade. or profession of the employer. Where the evidence shows that the injuries received were the result of one employee or vice-principal snapping a pistol at another in mere play or frolic, the injuries received were the result of play, horseplay, or prank on the part of such employee, and were not injuries of the kind and character having to do with and originating in-the work, business, trade, or profession of the employee, and not such injuries as come within the contemplation or profession of the Workmen's Compensation Law."

Article 5246—1, V. S. C. S., provides:

"In an action to recover damages for personal injuries sustained by an employee in the course of his employment, * * * it shall not be a defense," etc.

And article 5246—82 provides:

"The term 'injury sustained in the course of employment,' as used in this act, shall not include * * *.

"4. An injury caused by the employee's willful intention and attempt to injure himself, or to unlawfully injure some other person, but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

It will be seen before the plaintiff can recover under the provisions of the statute quoted the injury must have been sustained by him "while in the course of his employment," and must be "one having to do with and originating in the business of his employer," and that it must have been received while he was "engaged in or about the furtherance of the affairs or business of his employer." It seems to be conceded that plaintiff was at the time of the injury engaged in the business of his employer, and that he did not instigate and took no part in the horseplay which resulted in his injuries. The inquiry then is: Was the injury of a kind and character having to do with and originating in the business of his employer? The employer's business was that of conducting a theater. The evidence shows that one or two pistols were kept behind the scenes for the purpose of being fired to "give atmosphere," or to add a thrill to the play at the psychological moment, and that Shaver, the plaintiff's vice principal, sometimes fired the pistol for that purpose. The injury did not result, however, from the firing of the pistol during a play. We understand from the record that no play was on at this time, and that Shaver was on the stage with Cassell, Weinberg, a girl by the name of Gossett, and possibly other employees and those

connected with the business; and was snapping his own pistol at several of the parties, including the plaintiff. It is admitted that he did not purposely injure the plaintiff, and that there was no malice connected with it. It is simply another case of "the proverbial fool with the unloaded pistol." If he had been using one of the pistols provided by the theater company for the purpose of giving "atmosphere" at the proper time to the plays, we think there are some cases which would justify us in holding that the injury had to do with and originated in the business of the employer; but the record shows that Shaver had his own pistol, and had not used one of the pistols provided by the company, nor does it appear that his pistol had ever been used in connection with the business of the theater. It was clearly beyond the scope of his employment to be snapping his pistol at those associated with him in the business, and snapping pistols about the premises during the interim between plays was certainly not a matter which had anything to do with his duties, and did not originate in and is utterly without connection in any way with the business of his employer. We have found an exhaustive note and several cases in 13 A. L. R. 540, which discuss the right to compensation for any injuries sustained through horseplay, and believe, after a careful perusal of the note, and the cases which precede it, that no compensation is recoverable in this case. The wording of the statutes under which the decisions discussed in the note were rendered are not identical in the various jurisdictions. While the question is not without difficulty; we believe, under the peculiar wording of the Texas statute, the injury resulting from the use by Shaver of a pistol which was his private property and in a manner and under circumstances foreign to his duties as vice principal, that the company, cannot be held liable, and that the injury has nothing to do with the business, and did not originate from the conduct of the business.

The judgment is reversed, and here rendered for the appellant.