## APRIL, 1926

## L. P. CASSELL ET AL V. UNITED STATES FIDELITY & GUARANTY COMPANY.

No. 3559.  Decided April 7, 1926.

(283 S. W., 127.)

1.—**Workman's Compensation Law—Injuries in Course of Employment—Prank of Fellow Employe.**

An injury received by an employe, though caused by mere prank or horse play of fellow-servant, is one "having to do with and originating in the work, etc., of the employer," the injured person not participating in the sport. The danger of injury by such prank is one to which he is naturally exposed by his employment bringing him in contact with other employees liable to injure him carelessly or by practical jokes. (Pp. 376-385.)

2.—**Same.**

Liability for injury under the Workman's Compensation Law does not depend on negligence of the employer or of those for whose negligence he must respond; but upon the peril being one to which he is exposed by

being engaged in the performance of his work. Lumberman's Reciprocal Assn. v. Behnken, 112 Texas, 103, followed. (Pp. 385-389.)

3.—Case Stated.

An employe of a theatre company while engaged on the stage in the course of his work was injured by the unintentional discharge of a pistol snapped at him in horse play in which he was not participating by the stage manager of the theatre by whom he was employed and under whose direction he worked. Held that a recovery against the surety company by which he had been insured against injury in the employment was supported by the facts, irrespective of whether the company was liable for negligence of the manager as its agent pursuing its business. (Pp. 374-392.)

4.—Employer's Business—Pranks of Employes.

Since mere pranks, the result of human craving for fun, when careless though innocent, not infrequently occasion bodily harm, they are to be considered a hazard which the employe required to work with others must encounter in the performance of his duties, and hence constitute a risk reasonably inherent in or incident to the conduct of the employer's business. (P. 392.)

Error to the Court of Civil Appeals for the Seventh District, in an appeal from Wichita County.

A judgment of Cassell for personal injuries against the Surety Company under the Workman's Compensation Act was reversed on appeal by defendant (243 S. W., 504). Cassell thereupon obtained writ of error. The case being referred by the Supreme Court to the Commission of Appeals, by whom a reversal and an affirmance of the judgment of the District Court was recommended, it was subsequently withdrawn from the Commission and considered by the Supreme Court. Reaching the same conclusion as the Commission they direct that its opinion be published along with their own.

E. E. Clark and Parks & Hall, for plaintiff in error.

The great weight of authority in other jurisdictions and under statutes more unfavorable to recovery by employes than our statute is that horse-play and the like is no defense if the employe did not engage in the same and was accidentally injured by such in the course of his employment, which, in part will be seen from the following cases: Knopp v. American Car & Foundry Co., 186 Ill. App., 605; Pekin Cooperage Co. v. Industrial Board, 277 Ill., 53, 115 N. E., 128; Phil Hollenbach Co. v. Hollenbach, 181 Ky., 262, 204 S. W., 152; Markell v. Daniel Green Felt Shoe Co., 221 N. Y., 493, 116 N. E., 1060; Leonbruno v. Champlain Silk Mills, 229 N. Y., 470, 128 N. E., 711; Willis v. State Industrial Commission, 78 Okla., 216, 190 Pac., 92; Newport Hydro Carbon Co. v. Industrial Commission, 167 Wis., 630, 167 N. W., 749; Industrial Commission v. Weigandt, 130 N. E., 38. But the cases more di-

rectly in point with the case now at bar sustaining the rule that horseplay is no defense are the following: Re Loper, 64 Ind. App., 571, 116 N. E., 324; Stuart v. Kansas City, 102 Kans., 307, 107 Pac., 913; White v. Kansas City Stock Yard Co., 104 Kans., 90, 177 Pac., 522; State Ex Rel. H. S. Johnson Sash & Door Co. v. District Ct. 140 Minn., 75, L. R. A., 1918E, 502, 167 N. W., 283; Clayton v. Hardwick Colliery Co., 85 L. T., K. B., N. S., 292, 114 L. T., N. S., 241, 32 Times L. R., 159.

The undisputed facts set out in the trial court's conclusions of fact show as a matter of law, that the injury to Cassell "was one having to do with and originating in the work, business, trade or profession of his employer while he was actually engaged in or about the furtherance of the affairs or business of his employer." White v. Kansas City Stock Yards Co., 177 Pac., 522.

*Seay, Seay, Malone & Lipscomb,* for defendant in error.

Under the Workmen's Compensation Law of Texas the injury must not only be received by the employe while engaged in or about the furtherance of the affairs or business of his employer but must "originate in the work, business, trade or profession of the employer." Where the evidence shows that the injuries received were the result of one employe or vice-principal snapping a pistol at another in mere play or frolic, the injuries thus received were the result of play, horse-play, frolic or prank on the part of such employe, and were not injuries of the kind and character having to do with and originating in the work, business, trade or profession of the employe, and not such injuries that come within the contemplation or provision of the Workmen's Compensation Law.

Art. 5246, Sec. 82, Revised Statutes, Compensation Law; G. H. & S. A. Ry. Co. v. Currie, 100 Texas, 136, 96 S. W., 1073; Rodgers v. Tobias, 225 S. W., 804; Payne v. Industrial Commission, 129 N. E., 122; Hulley v. Mooseburger, L. R. A., 1916-C, p. 1203; Coronado Beach Co. v. Pillsbury, 158 Pac., 212; Fishering v. Pillsbury, 158 Pac., 215; Federal Rubber Mfg. Co. v. Havolic, L. R. A., 1916-D, p. 968; Workmen's Compensation, Anno. L. R. A. 1916-A, p. 47; Workmen's Compensation Act, Corpus Juris Pamphlet, p. 79; Honnold on Workman's Compensation, Vol. 1, Sec. 121, p. 441 Lee v. Washburn & Haywood Chair Co., 20 A. L. R., 870; Federal Mutual Liability Ins. Co. v. Industrial Accident Commission,

(Cal.), 201 Pac., 920; Great Western Power Co. v. Industrial Accident Commission, (Cal.) 201 Pac. 931.

The mere fact that the pistol shot which caused the injury, as the result of a joke, horseplay or frolic, was fired by a vice-principal, or one alleged to be, is the same as if fired by a fellow-employee, in that the Compensation Law supersedes and is a substitute for damages allowed by common law regardless of the question of negligence, the sole question being whether the injury was of the kind and character having to do with and originating in the work, business, trade or profession of the employer.  Middleton v. Texas L. & P. Co., 185 S. W., 556.

*Cole, Cole & O'Connor*, as *amici curiae*, filed briefs in support of the positions of defendant in error.

MR. PRESIDING JUDGE POWELL delivered the opinion of the Commission of Appeals, Section B.

The Court of Civil Appeals, speaking through Associate Justice Hall, gives us a very admirable statement of the nature and result of this suit, as follows:

"This was a suit to recover compensation under the Workmen's Compensation Act, for an alleged accident which occurred to Cassell, as an employee of the Wichita Theatre Company.  The appellant Company defended upon the ground that the injuries complained of did not have to do with and originate in the business, trade or profession of the employer and were not received by Cassell while engaged in or about the furtherance of the affairs of his employer, but were the result of a frolic, horse-play or other amusement by and between the injured party and other parties and employees by pranking or fooling with a pistol which was accidentally discharged, causing the injuries; that said pistol was not used in nor had anything to do with the business of the employer, and was not connected in any way with the business of the plaintiff's employer.  Upon a trial to the court without a jury the court rendered judgment against the appellant. The findings of fact material to the issues to be considered are as follows:

" '8.  I find that on October 9, 1920, and prior thereto, one Walter Crosby was Manager of the Wichita Theatre Company and had supervision over the entire work; that the said Walter Crosby had authority to issue orders to the employees;

that he had authority to employ and discharge employees and to do anything necessary to the conduct of the business.

" '9. I find that on the said October 9, 1920, and prior thereto, the said W. C. Shaver was twenty-two years of age and was Manager of the stage of the Wichita Theatre Company, and as such had immediate supervision, direction and command over the employees of said stage, including the plaintiff, L. P. Cassell, who was a stage employee. I further find that the said Shaver had authority to issue such orders to the stage employees as was necessary to the conduct of the business and to employ and discharge the plaintiff, L. P. Cassell. I further find that the said W. C. Shaver, as such stage manager of the Wichita Theatre Company, employed the plaintiff Cassell. I further find that as to all other employees the said Shaver had authority to employ and discharge them, with the approval of the said Walter Crosby.

" '10. I find that on October 9, 1920, and prior thereto, the said Walter Crosby and W. C. Shaver required and permitted .pistols and other fire-arms to be kept on and about the stage of the Wichita Theatre Company, to be used when needed in certain acts of the theatre; that the said pistols so kept were sometimes fired to create an atmosphere for an act which was going on and when a pistol was so fired off the stage the said Shaver sometimes fired it; that said pistols were handled by employees of the Wichita Theatre Company, which employees had at all times access to them.

" '11. I further find that at the time of the accident to Cassell the said Cassell was in the course of his employment and in the discharge of his duties as a stage employee of the Wichita Theatre Company and was in the immediate presence of and under the supervision, direction, management and command of his superior, W. C. Shaver. I further find that Cassell had taken no part in any horse-play that was being carried on around him.

" '12. I further find that there had not existed the practice or custom among employees to snap pistols at each other and that so far as the record shows this has never been done except on the night of the injury to Cassell and in the manner prescribed in my next finding as to how the accident occurred to Cassell, except that in the morning of the same day a girl had another pistol on the stage that nearly all of the employees had fooled with during the day. I find further that the said Walter Crosby did not have knowledge of such horse-play with

pistols by the employees, and if he had have had such knowledge he would have probably called them down.

" '13. I find that Cassell received the pistol wounds which occasioned the injury herein about 11:30 Saturday night, October 9th, the pistol belonging to and was the personal property of W. C. Shaver, and was not being used by said Shaver in any manner connected with his duties as employee. I find that about fifteen minutes prior to the time Cassell was shot that said W. C. Shaver had, in fun or as a prank and with no intent to injure, snapped the pistol once or twice at a young lady by the name of Gossett; that between the time he snapped it at the young lady and the time Cassell was injured, he snapped it two or three times at the stomach of one Weinberg. I find that this was done in fun or frolic or as a prank with no intent to injure the said Weinberg. I find that he snapped the pistol at .Cassell three times; that the first two times the pistol snapped and the third time the pistol exploded and the bullet struck Cassell in the back, injuring his spinal column and causing complete paralysis from the waist down. I find that Shaver was snapping the pistol at Cassell with no intent to injure, but as a prank or play.'

"The court concluded as a matter of law as follows: 'That the injury to Cassell was an injury sustained in the course of his employment and of the kind and character having to do with and originating in the work, business, trade or profession of an employer received by the employees while engaged in or about the performance of the affairs and business of the employer.' "

Upon appeal to the Court of Civil Appeals, that Court reversed the judgment of the District Court and rendered judgment for the insurance company. See: 243 S. W. R., 504.

Under our compensation act in Texas, Cassell is entitled to recover in this case if the District Court correctly concluded that his injury "was an injury sustained in the course of his employment and of the kind and character having to do with and originating in the work, business, trade, or profession of an employer received by the employees while engaged in or about the performance of the affairs and business of the employer." Our statute so provides.

In this case, it is conceded by all that Cassell, at the time of his injury, was in or about the performance of the affairs and business of his employer, and, therefore, in the course of his employment. The sole question here presented is whether

or not his injury had to do with and originated in the work of his employer.

As Judge Hall says: "Was the injury of a kind and nature having to do with and originating in the business of his employer?"

The facts in this case are undisputed. Upon this state of facts, the District Court held, as a matter of law, that Cassell was entitled to compensation. Upon that same state of facts, the Court of Civil Appeals held, as a matter of law, that Cassell was not entitled to compensation, and rendered final judgment accordingly. Which was correct?

Since Judge Hall's opinion was written in this case, and since the writ of error was granted by the Supreme Court herein, our Supreme Court has construed the compensation act, in this connection, and said:

"The Workmen's Compensation Law provides for compensation for the death of an employee from 'an injury sustained in the course of his employment,' and declares that 'all other injuries of every kind and character,' except certain enumerated injuries from causes or under conditions quite different from any attending the injury to Behnken, shall be included within the term 'injury sustained in the course of employment,' when 'having to do with and originating in the work, business, trade or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of the employer, whether upon the employer's premises or elsewhere.' Articles 5246-51, 5246-52, Vernon's Sayles' Texas Civil Statutes, 1918 Supplement.

"The principal contention of plaintiff in error is that Behnken's injury did not have to do with and originate in the work or business of his employer, and that Behnken was not engaged at the time of the injury in or about the furtherance of the affairs or business of his employer, and that hence the injury was not received in the course of Behnken's employment.

"An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business. As tersely put by the Supreme Court of Iowa: 'What the law intends is to protect the employee against the risk or hazard taken in order to perform the master's task.' Pace v. Appanoose County, 184 Iowa, 498, 168 N. W., 918.". Lumberman's Recip. Association v. Behnken, 112 Texas, 103.

The construction given by Judge Greenwood in the Behnken case has been followed by the Supreme Court of the United States in the case of Cudahy Packing Co. v. Parramore, decided December 10, 1923, and reported in 263 U. S., 418, 68 Law Ed., 148. In that case, Justice Sutherland had facts before him almost identical with the facts in the Behnken case and he held the injury arose out of the employment and allowed compensation. He also held that the act did not violate the Constitution of the United States. He cites the Court of Civil Appeals' opinion in the Behnken case in support of his finding, probably not having yet received the 112 Texas and discovered that the Supreme Court had affirmed the judgment of the lower courts in the Behnken case.

It is true that Judge Greenwood and Judge Sutherland, in the cases above mentioned, did not have a fact case involving horse-play or sky-larking. So far as we have been able to ascertain, the case at bar is the first case in any appellate court in Texas involving horse-play. Counsel cite no Texas case involving it and Judge Hall refers to no such case. In these circumstances, Judge Hall naturally turned to other jurisdictions for authority. He does not cite any particular case in his opinion, but does refer to a very able note on page 540 of 13 A. L. R. In finally reaching his conclusion, Judge Hall admits that the case "is not without difficulty."

The A. L. R. citation, supra, relied upon by Judge Hall, is most interesting. It is a note on "horse-play" in connection with liability under compensation acts. The author starts with the following:

"It is generally held that no compensation is recoverable under the Workmen's Compensation Acts, for injuries sustained through horse-play or fooling which was done independently of and disconnected from the performance of any duty of the employment, since such injuries do not arise out of the employment within the meaning of the acts."

The author cites numerous cases in support of this general rule. Where the injured party was indulging in horse-play, we think the general rule aforesaid is correct, for the simple reason, as we see it, that under those circumstances, such employee received his injuries after turning aside from his employment and was no longer in the course of his employment.

But, this same author announces a conflict in the rulings of the courts where the injured party took no part in the horse-

play, but was going along with his usual work. In cases of this kind, the author first states:

"In some cases denying a right to compensation, the fact that the injured employee took no part in the horse-play or fooling has been regarded as immaterial. Coronado Beach Co. v. Pillsbury (1916) 172 Cal., 682, L. R. A. 1916F, 1164, 158 Pac., 212, 12 N. C. C. A. 789; Tarpper v. Weston-Mott Co. (Mich.) supra; Pierce v. Boyer-Van Kuran Lumber & Coal Co. (1916) 99 Neb., 321, L. R. A. 1916D, 970, 156 N. W. 509; Hulley v. Moosbrugger (1915), 88 N. J. L., 162, L. R. A., 1916C, 1203, 95 Atl., 1007.

The next proposition of this author is stated thus:

"But in a number of cases an exception to the general rule has been recognized, and the right to compensation sustained, where an employee, who was injured through horse-play or fooling by other employees, took no part in the fooling, but was attending to his duties. Knopp v. American Car & Foundry Co. (1914) 186 Ill. App. 605, 5 N. C. C. A., 798; Pekin Cooperage Co. v. Industrial Bd. (1917) 277 Ill., 53, 115 N. E., 128; Phil Hollenbach Co. v. Hollenbach (reported herewith) ante, 524; Markell v. Daniel Green Felt Shoe Co. (1917) 221 N. Y., 493, 116 N. E., 1060; Leonbruno v. Champlain Silk Mills (reported herewith) ante, 522; Willis v. State Industrial Commission (1920) 78 Okla., 216, 190 Pac., 92; Newport Hydro Carbon Co. v. Industrial Commission (1918) 167 Wis., 630, 167 N. W. 749."

In the case at bar, Cassell took no part in the horse-play. Upon that point, Judge Hall says:

"It seems to be conceded that plaintiff was at the time of the injury engaged in the business of his employer, and that he did not instigate and took no part in the horse-play which resulted in his injuries."

Therefore, the question for determination now before us is: Which line of authority shall Texas follow? Judge Hall saw fit to follow the line holding that it is immaterial whether the injured party had any part in the horse-play or not. After a careful reading of the authorities, we have concluded that Texas should adopt the contrary rule and follow those States which recognize the exception to the general rule where the injured party took no part in the horse-play. Why do we so conclude? Because, we think, in the first place, that the States so recognizing the exception to the general rule do so upon the theory which is exactly in line with the test laid down by

Judge Greenwood in the Behnken case, and heretofore quoted by us. The wording of compensation statutes in the several states of our country varies to a certain extent, but the same general beneficent results are attempted by them all. Many of the states provide that the injury must arise out of the employment before recovery can be had. As we view it, that language is not different, in effect, from the language our own statute employs. If the injury arises out of the employment, it originates in the employment. If it so originates, it has to do therewith. At any rate, Judge Greenwood says that an injury is within our statute if it is inflicted as the result of a risk reasonably incidental to the work being done by the employee so injured. So hold many of the States where the statute provides that the injury must grow out of the employment before liability can attach. In other words, those states hold that horse-play is reasonably incidental to employments where people gather and commingle with each other. If they correctly so hold, then they meet the test laid down in the Behnken case. We shall now review a few of these cases and we think they correctly hold that horse-play is reasonably incidental to a gathering of men under the circumstances present in those cases.

In the case of Willis vs. Industrial Commission, 78 Okla., 216, 190 Pac., 92, the facts were these:

"The facts in this case agreed upon are as follows: It is agreed between the claimant and respondent, Alko Nak Coal Mining Company and Coal Operator's Exchange, that on the 18th day of February, 1919, the employes of the Alko Nak Coal Mining Company had been accustomed, during the hours of their service, when not actually engaged in their work, to stand by a fire that was kept on the premises, with the knowledge and acquiescence of the company, for the purpose of providing a place where they could be comfortable while not actually engaged at work, and such fire was had with the permission of the company.

"The facts further show that claimant and three other workmen, on February 18, 1919, were warming by the fire at an interval in their work and were not actually working at that particular time, but were on the payroll and their time was going on. A fellow employee came along where they were warming around the fire and threw a piece of split dynamite in the fire. When the dynamite was thrown into the fire the fellow servants, after being warned, all ran away,

except claimant, who had his shoe off trimming a corn. Claimant saw an old piece of dynamite, but not the cap. The fire was on the premises of the company where claimant was working. Claimant's daily wage was $5.40."

The Supreme Court, in the Oklahoma case, held the injured party was entitled to compensation. It said:

"If it be as stated in the text quoted, supra, that 'the words 'out of' point to the origin and cause of the accident or injury,' and the commission having found that the injury was caused by a fellow employee, and it being admitted that the petitioner was an employee and was where he had a right to be, it seems to us that it necessarily follows that the accident was due to the employment and resulted from a risk reasonably incident to the employment."

Concluding, the court went on to say:

"We think the correct rule is, and so hold in these cases, that if a workman is an active participant in what has been denominated 'horse-play,' he is not entitled to compensation, but if, while going about his duties he is a victim of another's prank, to which he is not in the least a party, he should not be denied compensation. 53 Am. Law Rev., p. 75."

Another very interesting case, where compensation was allowed, is that of Leonbruno vs. Champlain Silk Mills, 229 N. Y. 470. We quote from the Court of Appeals, the court of last resort in that great state, as follows:

"The claimant, while engaged in the performance of his duties in the employer's factory, was struck by an apple which one of his fellow-servants, a boy, was throwing in sport at another, and as a consequence lost the better part of the sight of one eye. He did not participate in the horse-play, and had no knowledge of it 'til injured. The question is whether the accident was one 'arising out of and in the course of employment,' within the meaning of the statute (Workmen's Compensation Law, Sec. 3, Subd. 7; Consol. Laws, Chap. 67.)

"That it arose 'in the course of employment' is unquestioned. That it arose 'out of' employment, we now hold. The claimant's presence in a factory in association with other workmen involved exposure to the risk of injury from the careless acts of those about him. He was brought by the conditions of his work 'within the zone of special danger' (Thom v. Sinclair, 1917 A. C. 127, 142.) Whatever men and boys will do, when gathered together in such surroundings, at all events if it is something reasonably to be expected, was one of the perils of

his service.   We think with Kalisch, J., in Hulley v. Moosbrugger (87 N. J. Law, 103), that it was 'but natural to expect them to deport themselves as young men and boys, replete with the activities of life and health.   For workmen of that age or even of maturer years to indulge in a moment's diversion from work to joke with or play a prank upon a fellow workman, is a matter of common knowledge to every one who employs labor.'. The claimant was injured, not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions inseparable from factory life.   The risks of such associations and conditions were risks of the employment (Thom v. Sinclair, supra; Matter of Redner v. Faber & Son, 223 N. Y. 379.)

"We think the precedents in this state, whatever variance of view there may be in other jurisdictions, sustain our present ruling.   This case is not within the principle of Matter of DeFilippis v. Falkenberg (219 N. Y. 581), and Matter of Stillwagon v. Callan Brothers (224 N. Y. 714), where the claimant, joining in the horse-play, had stepped aside from the employment (Cf. Matter of DiSalvio v. Menihan Co., 225 N. Y., 123.)   This case is rather within the principle of Matter of Verschleiser v. Stern & Son (229 N. Y. 192) where the claimant, while engaged in his work, was assaulted by fellow-workmen, who wished to tease and harrass him (Cf. Markell v. Green Felt Shoe Co., 221 N. Y. 493; Matter of Heitz v. Ruppert, 218 N. Y. 148.)   We do not overlook the cases in other jurisdictions.   Hulley v. Moosbrugger, supra, was reversed by the New Jersey Court of Errors and Appeals in 88 N. J. L. 161.   It is in accord, however, with a decision of the Supreme Court of Illinois (Pekin Cooperage Co. v. Industrial Board, 277 Ill. 53.) · English cases hostile to the award (Armitage v. Lancashire & Yorkshire Ry. Co., 1902, 2 K. B. 178; Fitzgerald v. Clarke & Son, 1908, 2 K. B. 796) are inconsistent, it would seem, in principle with later rulings of the House of Lords (Thom v. Sinclair, supra; Dennis v. White & Co., 1917, A. C., 479; Cf. Matter of Redner v. Faber & Son, supra, and Matter of Grieb v. Hammerle, 222 N. Y. 382.)   They are certainly inconsistent with the broader conception of employment and its incidents to which this court is now committed (Matter of Verschleiser v. Stern & Son, supra.)   The risks of injury incurred in the crowded contacts of the factory through the acts of fellow-workmen, are not measured by the tendency of such acts to serve the master's business.   Many things that

have no such tendency are done by workmen every day. The test of liability under the statute is not the master's dereliction, whether his own or that of his representatives acting within the scope of their authority. The test of liability is the relation of the service to the injury, of the employment to the risk.

"The order should be affirmed with costs."

We think, with the decisions already quoted, that it is a matter of common knowledge that in groups of employees horse-play of some kind is an incident that should be expected. If that be true, then, we submit that the particular kind of horse-play indulged in, in the case at bar, was the most natural kind. The facts show that Shaver was in the habit of "creating atmosphere" by shooting blank cartridges during performances. Furthermore, the stage is a place where pranks are practiced perhaps more than any other. The facts here also show that "on the morning of the same day (day of the accident) a girl had another pistol on the stage that nearly all of the employees had fooled with during the day." While the court finds that the practice of snapping pistols at each other had not occurred until about fifteen minutes before this accident, still the record shows that pistols were commonly used by the employees at this theatre at various times and that they were fooled with by these employees in various ways, including the creating of atmosphere by firing. Therefore, we submit that if horse-play of any kind was a reasonable incident to this employment, it certainly should have been anticipated that it would grow out of the use of a pistol in some way. We are of the view that the horse-play indulged in here was a reasonable incident of this particular employment.

We now quote from other interesting cases where recovery was allowed in horse-play situations and where the injured party did not participate in such horse-play.

In the Ohio case of Industrial Commission of Ohio v. Weigandt, 103 Ohio, 25, (N. S.) 1, 130 N. E., 38, the injured party, after punching the clock and proceeding to his work, was struck in the eye by a file which flew from its handle during a friendly scuffle between two other employees. The court held that he was injured in the course of his employment and went on to say that the scuffle was a thing not at all unlikely to occur; that such an event is of frequent occurrence between workmen.

In the case of Pekin Cooperage Co. vs. Industrial Board, 277

Ill., 53, the Supreme Court of that State allowed Garls compensation.  The facts in that case, as stated by the court, were:

"On November 1, 1913, he quit work about five o'clock and formed in line with the other employees to receive his weekly pay at the office window as he passed out of the building.  There were about seventy-five men in line and Garls occupied a position about the middle of the line.  Some of the men behind Garls began pushing forward and those in front of him began pushing backward at the same time, and Garls was squeezed out of the line and slipped or stumbled and fell upon the cement floor and received the injuries of which he complains."

The relevant contention of the company in that case, as stated by the court, was:

"The injury to Garls was the result of 'horse-play,' and did not arise out of the employment and was in no way incidental to his employment."

The court overruled aforesaid contention in the following language:

"There can be no serious contention that the injury did not arise out of his employment.  Garls was required to present the slip given him at the window in the office of plaintiff in error to receive his pay.  Complying with this regulation and standing in line waiting his turn he was jostled and thrown down and injured through no fault of his own.  It does not appear that he was engaged in any jostling or 'horse-play' or that he in any way was responsible for the injury he sustained."

The case of Phil. Hollenbach Co. v. Hollenbach, 181 Ky., 262, is quite interesting.  It is a decision by the court of last resort in that State.  We quote from it, in this connection, as follows:

"The point is made that Hollenbach, or one of his fellow-workmen, in the basement, placed the wire in the position it was at the time of the accident in order to play a practical joke on any person attempting to make use of the wash basin, and that this was foreign to the employment and, therefore, no recovery can be had under the act.  Ordinarily one injured while engaged in horse-play, in perpetrating a practical joke, or in some frolicsome prank, is not entitled to compensation under the act, but there are exceptions to this general rule.  One of the exceptions is where the injured employee is himself at his usual employment and not engaged in the play or joke, and the injury is caused by the sportive act of his fellows.  Thus it was held in Knopp v. American Car and Foundry Co., 186 Ill. App., 605, that an injury to an employee engaged in operating a trip hammer, which was caused by a stranger, in fun, placing a tin

can under the hammer, when the employee took no part in the sport, was entitled to compensation as the accident arose out of the employment. The evidence in this case wholly fails to show that Hollenbach was responsible for the wire being attached to the light socket, or that he knew of its connection. Had he· known of the wire at the wash basin, it may be presumed he would not have attempted to use the basin, especially had he placed it there to play a joke on a companion. Nor can it be contended that decedent was guilty of willful misconduct, as used in the act, because he was in the performance of the regular routine of his employment and was not guilty of any act which was willfully designed to produce injury."

The author of the note in 13 A. L. R., 540, writes up a Wisconsin case accurately as follows:

"In Newport Hydro Carbon Co. v. Industrial Commission (1918), 167 Wis., 630, 167 N. W., 749, it was held that a recovery might be had for the death of a workman, caused by taking hold, in pursuit of his work, of a conduit which had been connected with electric wires by a fellow workman as a joke. The court here said that the fact that the adjustment of the wires was made by the fellow servant for the purpose of playing a joke on the deceased did not change the latter's position and make outside of his employment that which grew out of and was incidental thereto; that so far as the deceased was concerned, he having taken no part in the joke, it was immaterial whether the wires dropped accidentally or were placed in position by the co-employee; and it was also stated that the fact that deceased had invited fellow workmen to touch a charged wire was also immaterial, since if what he did could be described as joking, his joke was at an end some time before his injury occurred."

We deem it unnecessary to refer to any other cases along this line. The ones just reviewed seem to us to be in harmony with the rule announced by Judge Greenwood in the Behnken case, and, in each of above cases, compensation was allowed where the injuries resulted from so-called horse-play in which the injured party took no part. We think they are correct and sound. For that reason, we recommend that this principle be followed.

On the contrary, the view of said other States seems to us to be based upon the underlying principle that the perpetrator of the horse-play must be acting within the scope of his employment in playing his jokes before an innocent· fellow worker, injured by such horse-play, can be awarded compensation. In

other words, they apply the doctrine of negligence to these cases. We think this involves a complete misconception of the purpose of these statutes. In this very case, Judge Hall says: "It was clearly beyond the scope of his employment to be snapping his pistol at those associated with him in the business." So it was. And, under the old common law rules, a master could not be held liable for the acts of an agent, unless such acts were within the scope or apparent scope of his authority. But, as we understand these compensation statutes, no such rules are to be applied in awarding compensation. We think this is the effect of the holding in the Behnken case, supra. We are sure it is held in other courts of much prestige.

For instance, in the Parramore case, supra, the Supreme Court of the United States says:

"Workmen's compensation legislation rests upon the idea of status, not upon that of implied contract; that is, upon the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital,—the one for the sake of the wages and the other for the sake of the profits. The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured."

In the Leonbruno case, supra, the Court of Appeals of New York said, in this connection:

"The risks of injury incurred in the crowded contacts of the factory through the acts of fellow-workmen, are not measured by the tendency of such acts to serve the master's business. Many things that have no such tendency are done by workmen every day. The test of liability under the statute is not the master's dereliction, whether his own or that of his representatives acting within the scope of their authority. The test of liability is the relation of the service to the injury, of the employment to the risk."

We think the New York court, as just quoted, has stated the rule splendidly, and that liability does not depend on whether or not the acts causing injury tend to serve the master's business. If so, since horse-play never tends to serve or advance a master's business, no recovery of compensation could ever be had where horse-play was present. We cannot think any legislature has intended to make any such rule which in so many cases would deprive workmen of compensation even though they were entirely blameless and could have avoided the injury only by remaining away from their work.

Our Texas statute declares that certain defenses shall not avail the employer. It then prescribes that, where an employer is a non-subscriber, the plaintiff must show that the injury resulted from the act of a servant acting within the general scope of his employment. The context in this part of the statute clearly indicates that the Legislature did not care anything about the so-called "scope of employment" in cases where the compensation act applied.

The gist of one contention of the company here is that before a recovery can be had it is necessary that the accident grow out of an act on the part of Shaver which was in the course of his employment. That is, it is contended that Shaver and Cassell must both have been in the course of their employment when the accident occurred. If the Legislature had intended to so provide, it could easily have done so. Or, it can easily do so hereafter. It has not said so up to this time.

But, even if our Legislature had provided that both parties must be in the course of their employment before liability can attach, recovery in this case might still be debatable. Applying the test as to whether a party is in the course of his employment as laid down in compensation cases, much argument could be advanced to the effect that the case at bar would even meet a test requiring that both parties must be in the course of their employment. For, in this case, it is certain that Cassell was injured because he was at the theatre working at his job. He was unquestionably in the course of his employment. Not only so, but Shaver was at the opera house because his work in directing these employees required him to be there. These employees were under his immediate supervision at the time of the accident. They were under his direction and working under him. But for these duties of supervision, he probably would not have been there at all, in which latter event, the pistol would not have been fired and the injury would have been avoided. But, as already stated, we do not think our Legislature intended to say, even by implication, that the accident must originate in one who is, at the time, in the course of his employment. Therefore, we do not have to pass upon this question.

The courts all over the United States, and in England, have awarded compensation to employees who were accidentally injured at the hands of parties or companies over whose employees the employer in suit had no control whatever. Therefore, in numerous cases compensation is allowed because of risks incident to the work and which risks are unconnected with any fellow employee. If a stricter rule is to be invoked where the

injury is a result of the action of a fellow employee, then it must be held that the Legislature intended a different rule where a fellow employee caused the injury. We do not think the Legislature had any such intention. It did not intend to make a different rule where a fellow employee was involved and to require, in that instance, that his act causing the injury must have been done by him within the scope of his employment and authority. We make this statement for the very reason that the Legislature, in passing our statute, expressly provided that it shall not be a defense "that the injury was caused by the negligence of a fellow employee." It seems to us that this provision, by implication, shows the intention of the Legislature that no stricter rule would be required under any circumstances because the injury was the result of the act of a fellow employee, whether an act of negligence or one of horse-play.

We believe that our observations with reference to the theories of the courts which hold contrary to our view are sound and plausible. But, whether we have correctly construed these contrary decisions or not, we do feel certain that our conclusion is in accord with the decisions which we have followed. Because we do feel certain of the correctness of the decisions in those States which allow recovery in cases of horse-play, where the injured party took no part in such horse-play, we do not hesitate to recommend that the judgment of the District Court in this case be affirmed.

Practically every State in the American Union has liberally construed these statutes in order to allow compensation to an employee who was injured while he himself was in the course of his employment. As shown by the court in the Kentucky case we have quoted from, "the courts have been practically unanimous in according to the Workmen's Compensation Acts a broad and liberal construction in order to effectuate their evident intent and purpose." We are glad to say that the courts of Texas have been no exception to this general rule. We feel that it is greatly to their credit that they have been uniformly liberal in allowing compensation to employees who were at their work in good faith when injured. We really have no doubt as to the construction of the statute and of its applicability to the facts of this case. But, even if we were in doubt about the construction, we would not hesitate one moment to resolve that doubt in favor of this employee who was at work when he was injured and who was not in any sense responsible for the injury which befell him at the hands of a fellow employee who

was also at work at the time, even though the latter did digress for a moment to indulge in some horse-play which caused the injury. This construction is certainly more humane and it is, at least, in accord with many principles of our law which make every effort to compensate an employee who is hurt without fault on his part. We think the Industrial Accident Board of Texas and the District Court made a good start in having Texas follow those States which compensate a man under these circumstances. We recommend to the Supreme Court that it follow those States.

In the aforesaid note to 13 A. L. R., p. 540, the author tells of another exception to the general rule about horse-play, in these words:

"Another exception to the rule stated at the beginning is recognized in cases of injuries sustained through skylarking which was commonly carried on by the employees with the knowledge or consent of the employer, or, at least, with his acquiescence, and injuries received under such circumstances have been held to have arisen out of and in the course of the employment, so that compensation might be had under the Workmen's Compensation Acts. Re Loper (1917), 64 Ind. App., 571, 116 N. E., 324; Stuart v. Kansas City (1918), 102 Kan., 307, 171 Pac., 913; White v. Kansas City Stock Yards Co. (1919), 104 Kan., 90, 177 Pac., 522; State Ex Rel. H. S. Johnson Sash & Door Co. v. District Ct. (1918), 140 Minn., 75, L. R. A., 1918E, 502, 167 N. W., 283; Clayton v. Hardwick Colliery Co. (1915), W. N. (Eng.), 395, 85 L. J. K. B. N. S., 292, 114 L. T. N. S., 241, 32 Times L. R., 159, 60 Sol Jo., 138, 9 B. W. C. C., 136."

Counsel for Cassell invoke this exception also. It is not contended that the custom of snapping pistols at the employees had been going on at this opera house before the night of the accident. But, the contention is made that inasmuch as the snapping itself was done by the vice-principal of the company, the company itself had notice at that very instant that this practice was being indulged in; that, therefore, if it did not stop it before the accident occurred fifteen minutes later, this particular exception to the general rule would apply.

The trial court sustained this theory as an additional reason why compensation should be allowed. In view of what we have already said, we do not think it necessary to pass upon this possible additional reason as to why the judgment of the District Court should be affirmed. Therefore, we do not do so. The opinion is already lengthy, but we have felt that the nov-

elty of this particular horse-play question in Texas is sufficient to justify such length. We have desired to be helpful to the court.

For the reason already discussed, we recommend that the judgment of the Court of Civil Appeals be reversed and that of the District Court affirmed.

MR. JUSTICE GREENWOOD delivered the opinion of the Supreme Court.

The question to be determined in this case is whether a serious and permanent injury to plaintiff in error Cassell had to do with and originated in the business of his employer, the Wichita Theatre Company. The facts disclose that the employer's stage manager went on the stage, where Cassell was then engaged in the proper discharge of his regular duties as a stage hand, and in fun snapped the stage manager's pistol, supposed to be unloaded, at other employees and at Cassell, when the pistol fired and injured Cassell. Other pistols were kept by the company for use during theatrical performances but there was no practice of playing with pistols which had been acquiesced in by the company. Declaring the question difficult, the Honorable Court of Civil Appeals at Amarillo determined that the injury did not originate in the employer's business, and reversed a judgment of the District Court which awarded Cassell a recovery under the Workmen's Compensation Act. 243 S. W., 504. Section B of the Commission of Appeals, in an opinion by Presiding Judge Powell, recommended an affirmance of the judgment of the District Court. Since it appeared to us that the weight of authority might be contrary to the recommendation of the Commission, we withdrew the case for our own determination. We have now reached the conclusion that our statute does sustain the award of compensation to Casesll and that the views expressed in the Commission's opinion are substantially sound. We shall, therefore, write no more than a brief supplement to Judge Powell's opinion, which will be published herewith.

For many years before the Texas statutes were enacted, Workmen's Compensation Acts reflected the settled policy of England; and our statutes, like those of most American States, seem to have been modeled after the English Acts. The English Acts of 1897 and 1906 and most American Acts provide compensation for personal injury by accident "arising out of and in the course of the employment."

In applying the words "arising out of the employment" the

English decisions are not harmonious.  Challis v. London & S. W. Railway (1905), 2 K. B., 154, 7 W. C. C., 23, 74 L. J. K. B., 571; Fitzgerald v. Clarke & Son (1908), 99 L. T., 101, 1 B. W. C. C., 200; Mitchinson v. Day Bros. (1913), 1 K. B., 603, 6 B. W. C. C., 190; Shaw (Glasgow), Ltd., v. Macfarlane (1914), 52 S. L. R., 236, 8 B. W. C. C., 385.  However, the English courts may perhaps be said to have come to generally recognize the correctness of the declaration in Andrew v. Failsworth Industrial Society, 73 L. J. K. B., 510, 513 (1904), 2 K. B., 32, 35, that "if there is under particular circumstances in a particular vocation something appreciably and substantially beyond the ordinary normal risk which ordinary people run, and which is a necessary concomitant of the occupation the man is engaged in, then I am entitled to say that that extra danger to which the man is exposed is something arising out of the employment; and if in consequence of that extra danger a fatality occurs, I am entitled to say that the section applies and the applicant is entitled to recover."  In short, the accepted test which the English courts have tried to follow seems to have been, did the injury. occur from exceptional exposure to danger incurred through performance of the employee's duty?  Pierce v. Provident Clothing & Supply Co. (1911), 80 L. J. K. B., 833-835, 1 K. B., 997; Martin v. Lovibond & Sons, Ltd. (1914), 2. K. B., 232; Thom v. Sinclair (1917), A. C., 127, Ann. Cas. 1917D, 193; Dennis v. White & Company (1917), A. C. 479, Ann. Cas. 1917E, 325.  In determining whether an accident arose out of an injured party's employment, the Supreme Court  of the United States has used the test prescribed by these English decisions.  Cudahy Packing Company v. Parramore, 263 U. S., 418, 68 L. Ed., 366.

Our statutes, in requiring that an injury in order to be compensable must be one other than those specifically enumerated, and one "having to do with and originating in the work" have in effect adopted the requirement of the English and of most American Acts that the injury "arise out of the employment." Applying our statutes and giving them a construction conformable in principle to the leading English decisions, this Court held that an injury to one Behnken by being run over by a train at a crossing was compensable because in doing the work required of him Behnken was subjected to special danger from moving trains at the crossing.  Lumbermen's Reciprocal Association v. Behnken, 112 Texas, 112.  Like application was given our statutes in Scurlock's case.  Kirby Lumber Company v. Scurlock, 112 Texas, 124.

Considering every employee peculiarly exposed to such pranks from his co-employees as are inspired by nothing more than a well-nigh universal human craving for fun, and recognizing that such pranks, when careless though innocent, not infrequently occasion bodily harm, we are forced to consider these pranks as a hazard which the employee required to work with others must encounter in the performance of his duties, and hence such pranks constitute a risk reasonably inherent in or incident to the conduct of the employer's business. Clayton v. Hardwick Colliery Co., Lim. (1915), 85 L. J. K. B., 292; Matter of Markell v. Green Felt Shoe Co., 221 N. Y., 493.

As said in Chicago, I. & L. Ry. Co. v. Clendennin, 143 N. E., 303:

"It is a matter of common knowledge to employers of labor, that men working together, or in near proximity to other workers, will·indulge in moments of diversion from work to play pranks on each other; and where the duties of the employment require that an employee perform his work in a factory or mill with or near to other workers, whether such workers are co-employees or not, the risk from accident is thereby, to some extent at least, necessarily increased, and this increased risk is a risk of the employment."

Furthermore, we think that the Legislature of Texas in declaring what shall not be included within the term "injury sustained in the course of employment" makes it reasonably plain that it was not intended to put such an injury as that sustained by Cassell without the benefits afforded by our statutes. For, the Legislature in excluding injuries "by the act of God," was particular to fix liability for even an injury so ocasioned if the employee was at the time engaged in the performance of duties which subjected him to a special hazard from the act of God causing the injury. With such a plain intimation of legislative purpose not to deny but to fix liability for an injury arising from a hazard to which the performance of Cassell's duties specially subjected him, we would not be justified in doing otherwise than sustaining the award made him by the District Court.

It is ordered that the judgment of the Court of Civil Appeals be reversed and that the judgment of the District Court be affirmed.

*Reversed and judgment of District Court affirmed.*