**UNITED STATES CASUALTY CO. v. HARDIE.   (No. 2019.)**

Court of Civil Appeals of Texas. El Paso.
April 20, 1927.

Rehearing Denied May 5, 1927.

1. **Master and servant ⚖═⇒371—To be compensable, injury must originate in employer's business and be received while employee was engaged therein (Rev. St. 1925, art. 8309).**

Under Rev. St. 1925, art. 8309, to show liability of insurer for injury to an employee under the Workmen's Compensation Law, the injury must originate in employer's business and be received by employee while engaged in furtherance of employer's affairs.

2. **Master and servant ⚖═⇒346—Workmen's Compensation Law gives employees common-law relief through insurance, and eliminates certain defenses specified (Rev. St. 1925, art. 8306, § 1).**

The interest of the Workmen's Compensation Law is to give the employees common-law relief through insurance, and to eliminate certain defenses specified in Rev. St. 1925, art. 8306, § 1.

3. **Master and servant ⚖═⇒373—Injury to employee while attempting to ward off friendly assault held compensable (Rev. St. 1925, art. 8309).**

Injury to employee of produce company while attempting to ward off friendly attack by employee of nearby competitive firm to prevent assailant from soiling his clothes *held*, in view of Rev. St. 1925, art. 8309, to have originated in business of his employer and while employee was engaged in furtherance of employer's business and affairs.

Appeal from District Court, Dallas County; Claude M. McCallum, Judge.

Action by the United States Casualty Company against John T. Hardie and others to set aside award of the Industrial Accident Board. From a judgment for named defendant and for plaintiff against defendants J. P. (Mac) Alexander and C. M. Shackelford, plaintiff appeals. Affirmed.

L. E. Elliott and Burgess, Burgess, Chrestman & Brundidge, all of Dallas, for appellant.

Coke & Coke, and Thos. G. Murnane, all of Dallas, for appellee.

WALTHALL, J. United States Casualty Company, hereinafter called insurer, brought this suit to set aside an award of the Industrial Accident Board of this state in favor of John T. Hardie, hereinafter referred to as claimant, for injuries received by him in Dallas, Tex., while employed in Dallas, Tex., by Merchants' Produce Company, a corporation. Insurer also sued J. P. (Mac) Alexander and C. M. Shackelford, and in the alternative alleged that if insurer was liable to claimant, then and in that event Alexander and Shackelford were liable to insurer for the same amount, and prayed for judgment against them.

Claimant answered denying insurer's allegations in so far as they attempted to allege that insurer was not liable to him for compensation. For cause of action claimant alleged substantially the following: He was at the time of his injuries an employee of the Merchants' Produce Company with its place of business in Dallas, Tex.; the competency of his employer to carry compensation insurance, and that it did carry such insurance with insured; at the time of his injuries complained of he was a salesman for his employer and while so employed he received an injury in Dallas, Tex.; that his employer maintained a warehouse or store in Dallas, and displayed its goods, consisting of fruits, vegetables, etc., on the sidewalk in front of its said store; that claimant's duties required him to be out in front of the store on the sidewalk, at which place he made sales of the produce; at said time a custom prevailed between his employer and C. M. Shackelford Company and other merchants in the vicinity of exchanging produce and borrowing, one from the other; that on the morning he received his injuries his employer had borrowed some lettuce from C. M. Shackelford; that in the afternoon of said day Mac Alexander, an employee of C. M. Shackelford, came onto the premises of claimant's employer, and, as was the custom, proceeded to help himself to the quantity of lettuce owing and due to his employer; as he started to leave the premises with the lettuce claimant, in the course of his duties, which required him to keep an account of his employer's goods, called to said Mac Alexander and asked him how much lettuce he had; that said remark served to direct Alexander's attention to claimant; that Alexander put the lettuce down and came to where claimant was standing and seized him; that claimant's effort to release himself and Alexander's effort to force claimant off his feet caused claimant to unknowingly overexert and overtax his physical strength and to strain his heart to such extent as to wholly incapacitate him; he states his injuries received and asked for 400 weeks' compensation. Insurer filed its supplemental petition consisting of a general demurrer and general denial.

The cause was tried with a jury, and at the conclusion of the evidence insurer, in writing, requested a peremptory instruction in its favor, which the court refused, and submitted the case on special issues, and on the jury's verdict judgment was entered in favor of claimant, and in favor of insurer against Alexander and Shackelford on its cross-action.

Insurer filed its motion for a new trial, which was overruled, and insurer excepted and gave notice of appeal and gave bond.

⚖═⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Opinion.

Germane to its one assignment insurer presents one proposition to the effect that where a friendly scuffle between claimant and a third party, not connected with the business of claimant's employer, is occasioned by the character of the clothes worn by claimant, an injury occurring to claimant by overexertion during such scuffle does not have to do with nor originate in the work, business, trade, or profession of the employer, and it was reversible error not to give insurer's requested peremptory instruction in its favor.

No question is raised here as to the character or extent of claimant's injuries, leaving the sole issue to be determined the character of claimant's employment and the circumstances attending the accident causing the injuries to claimant. There is no material conflict in the evidence. The jury found that claimant sustained the personal injuries complained of; that the injuries were sustained in the course of his employment with the Merchants' Produce Company of Dallas, Tex.; that the injuries sustained arose out of and during his employment; that the injuries resulted in claimant's total incapacity from October 11, 1923, to February 9, 1925. The jury made other findings which we need not state.

A few excerpts from the evidence will more clearly and definitely show the character of claimant's employment and the circumstances under which the injuries occurred.

John T. Hardie testified in his own behalf. He said, in part:

"During the last seven or eight years I have been engaged in the wholesale produce business as salesman and floor manager for the Merchants' Produce Company, located in Dallas. * * * I was so engaged on the 11th day of October, 1923, working in the capacity of salesman and had charge of the front. * * * (Describes the location of the building with reference to streets.) The building sets back from the curb about ten feet. We sell altogether from Cadiz street entrance. * * * Every morning when we open the doors of the store we rolled out what we called the front display, a certain amount of each commodity that we have to offer for sale, and the buyers coming to market, seeing the choice products when they come onto the sidewalk, and that is about as far as we get in the morning. * * * Practically all of our early morning business, and the greater part throughout the day, is sold off of the walk. * * * What we call 'a 'front salesman' sells goods from this walk. Of course they work all over the building, inside and outside, but they place themselves near the front and work on the front altogether in the morning, and through the day are called inside sometimes. * * * On the 11th day of October, 1923, I was a salesman and had charge of the front. It was my duty to open up the store about 4 o'clock, anywhere from 3 to 4, and check everything brought from the depots, the express shipments, etc. It was my duty to check those in and keep a record and enter them in the books and see that cars were unloaded on time to stop demurrage, and see that the truck drivers and everything were there on time; in fact, to keep general charge of the outside, everything outside of the office; and I waited on the trade. On the 11th of October, 1925, the American Produce Company was on our right, and a man by the name of C. M. Shackelford had his place of business fronting Pearl street, right back of the Merchants' Produce Company's place of business, all under the same roof in one sense of the word. At this time there was a custom among the merchants whereby if we were short any item and needed it before we could go back to the car and get it, we went to one of our neighbors and borrowed it until we drew it out of our car and replaced it. That was the general custom. On or about the 11th day of October, 1923, we had borrowed some lettuce from Mr. Shackelford. * * * It was my duty in connection with this borrowing to check it in and out. On or about the 11th day of October, 1925, and about four o'clock in the afternoon, Mr. Mac Alexander, an employee of C. M. Shackelford, came to our place of business to get part of the lettuce that we owed Mr. Shackelford. I was out in the front talking to two gentlemen at the time. * * * Mr. Mac Alexander came up and started gathering up the lettuce and putting it in a paper bag. After Mac Alexander had put the lettuce in a sack and as he started up Pearl street to leave, I called out to him and asked him how much lettuce he had, and he just looked around and never answered me at that time. I never gave it much thought for the moment, and then I turned around to finish my conversation with the two men. In the meantime he came back and set the lettuce down at the corner of the building and came around and faced me and reached out and grabbed hold of me. I had on a good suit of clothes that day—a new suit. He grabbed at me and caught hold of me, and I asked him not to do it, that he would get me all dirty, and that I had on my good clothes, and he said: 'That is what I want to do.' He said that I had no business with those clothes on, and he said, 'I want to dirty them.' He was not angry, and I guess it was in a playful way that he made that statement. I just held him off at arm's length, and he caught me and in trying to get me pushed me back. He was a larger man than I was, weighing about 190 pounds; and he carried me back; and after he carried me back so far he rushed me and threw his arms over me and locked them on me. He grabbed me first, and as he did so I caught him right here (indicating shirt front or lapels) and held him off at arm's length and asked him not to do it. He followed me up and kept coming at me. He had me with both hands, but I still held him away from me. As he was trying to come at me, he being heavier and stronger than I, it naturally carried me back; he finally broke my armhold and caught me and came over and grabbed me. I was in that position just a few seconds. I hollowed to him to quit. I was attempting to get away from him all the time, to release myself. After he had jumped and came over and caught this grab around my back I begged him to quit and he released me. Everything turned black to me then, and I felt like I couldn't get my breath."

Claimant then at length described his sensations and what he did.

Without quoting at length from the evidence, claimant's attending physician stated that as a result of claimant's scuffle with Alexander, claimant suffered from what is ordinarily known as "decompensated heart," that is, "the heart is dilated and is not capable of carrying on the function that it is supposed to carry on; the lungs become congested; the respiration becomes labored, the heart pounding and irregular, usually rapid." Claimant "was bedridden for probably five months. Unquestionably, so far as I could learn, the scuffle he had occasioned this condition that I found him in."

No question is made here as to the extent of claimant's injuries and that they were the result of the scuffle as detailed in the evidence of claimant quoted above. We submit the quoted evidence as disclosing claimant's duties at the time, what he was then doing in the discharge of such duties, and the circumstances showing, in a general way, just how his injuries were occasioned.

Compensation for personal injuries, under our Workmen's Compensation Law (Rev. St. 1925, art. 8306 et seq.), includes all injuries sustained by an employee in the course of his employment.

[1] The question presented for consideration arises under part 4, art. 8309, Revised Civil Statutes 1925. The term injury, or personal injury, is by the statute construed to mean damage or harm to the physical structure of the body. The injury includes all injuries of every kind and character, "having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

Under the provisions of our statutes above quoted it will be observed that to show liability on the part of the insurer there must be, in addition to the fact of the injury to an employee, a concurrence of two elements, namely: First, the injury received by the employee must have to do with and originate in the business of the employer; and, second, the injury must have been received by the employee while engaged in or about the furtherance of the affairs or business of his employer.

The above expressions from our statute have recently come before the courts of this state for interpretation and application. In Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 108, 246 S. W. 72, 28 A. L. R. 1402, and in Kirby Lumber Co. v. Scurlock, 112 Tex. 124, 246 S. W. 76, our Supreme Court held in each of said cases, in effect, that an injury to an employee subjecting him to a special danger was compensable under our Workmen's Compensation Law. In Cassell v. United States F. & G. Co., 115 Tex. 371, 283 S. W. 127, 46 A. L. R. 1137, where the injury resulted to Cassell in a frolic, horseplay, or amusement, by the explosion of a pistol, done in fun and with no intent to injure, and done at a time when Cassell was in the course of his employment, but had taken no part in the fun, frolic, or horseplay that was being carried on by others around him, Judge Greenwood, in considering that case, said:

"Considering every employee peculiarly exposed to such pranks from his coemployees as are inspired by nothing more than a well-nigh universal human craving for fun, and recognizing that such pranks, when careless though innocent, not infrequently occasion bodily harm, we are forced to consider these pranks as a hazard which the employee required to work with others must encounter in the performance of his duties, and hence such pranks constitute a risk reasonably inherent in or incident to the conduct of the employer's business [and referring to cases which we omit]."

Judge Greenwood in the Cassell Case also quotes with approval from Chicago, I. & L. Ry. Co. v. Clendennin, 81 Ind. App. 323, 143 N. E. 303, in which it is said:

"It is a matter of common knowledge to employers of labor that men working together, or in near proximity to other workers, will indulge in moments of diversion from work to play pranks on each other; and where the duties of the employment require that an employee perform his work in a factory or mill with or near to other workers, whether such workers are coemployees or not, the risk from accident is thereby, to some extent at least, necessarily increased, and this increased risk is a risk of the employment."

[2] But in the Cassell Case, and in the Behnken Case, and other cases, so far as we have observed, the injured employee took no part in the fun or diversion. But it is clearly held that an injury is within our compensation statute if it is inflicted as the result of a risk reasonably incidental to the work being done by the injured employee. As we view it the interest of our Workmen's Compensation Law is to give the employee common-law relief through insurance, and to accomplish that purpose and in addition thereto eliminate certain defenses specified in the statute. Even if it could be held under the above-quoted evidence of the claimant that he turned aside for a moment from the duty he was then discharging for his employer and by his act of warding off the friendly and playful attack of his assailant, and that by so doing he in a measure contributed in part to that which caused his injury, still, by express provision of our statute such is eliminated as a ground of defense. Article 8306, § 1, Rev. Civ. St. 1925.

[3] As we view the undisputed evidence in the case, all that claimant did when attacked by Alexander was involuntarily done. He was in no sense and at no time the aggressor. The extent and purpose of what he did was

an effort to ward off the attack made upon him to prevent his assailant from soiling his clothes.

Evidently the injury received by claimant employee had to do with and originated in the business of his employer, and while engaged in and about the furtherance of his employer's business and affairs.

Believing that the case should be affirmed, it is so ordered.