NEWPORT HYDRO CARBON COMPANY, Appellant, vs. INDUS-
TRIAL COMMISSION OF WISCONSIN and another, Re-
spondents.

*May 4—July 27, 1918.*

*Workmen's compensation: Conditions of liability: "Performing serv-
ice growing out of and incidental to his employment:" Death
caused by practical joke.*

While an electrician was getting a drink, charged testing wires
were placed, by a fellow workman, in contact with the tools
which he was using, and when he resumed work he received a
fatal shock. His duty to his employer required him to work at
that place and to use and to come in contact with the tools and
wires which caused his death. *Held*, that he·was at the time
"performing service growing out of and incidental to his em-
ployment," within the meaning of sub. (2), sec. 2394—3, Stats.,
and that the injuries sustained grew out of and were incidental
to the employment, even though his fellow workman had ad-
justed the wires for the purpose of playing a joke on him, sup-
posing he would receive only a slight shock, and even though
he himself had a few minutes earlier suggested that the fellow
workman ·touch a certain piece of iron which was perhaps
charged, his own participation in the joking or larking, if such
it was, having terminated some time before the injury. *Federal
R. M. Co. v. Havolic*, 162 Wis. 341, distinguished.

APPEAL from a judgment of the circuit court for Dane
county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

Workmen's compensation. On April 20, 1917, the de-
ceased, Joseph Kohn, was an electrician and employed by the
plaintiff as a part of an electrician's gang consisting of eight
men. On that day Kohn and Pearson, a fellow workman,
were engaged in cutting a piece of conduit to be used in the
installation of a motor. The piece upon which they were
working was fastened in a vise which was attached to a bench
about thirty inches high and thirty-six inches wide. On the
wall back of the bench was a conduit out of which ran an
ordinary piece of electric lamp cord carrying two strands of
wire. Two short heavy pieces of insulated wire were welded

on to the two strands of wire. The insulation at the end of the two heavier pieces was scraped off for about half an inch, and these wires carried a current which was used for testing fuses, motors, and other electrical equipment. When not in use the testing apparatus was hung in a piece of two-inch angle iron by sticking the ends through holes in the angle iron, which was thus made to serve as a rack for holding the wires. These wires were alive if connected or if both uninsulated ends were attached to a piece of metal or any other substance which would close the circuit. There was no switch on the wall at the point where the lamp cord left the conduit, but there was a cabinet near by containing a series of switches where the current which went to this testing apparatus could be turned off. The work in which the deceased, Kohn, and Pearson were engaged did not require them to make any use of the testing wires, and the wires were in their proper place, the ends being stuck through the holes in the angle iron. While engaged in working upon the piece of conduit in question Kohn suggested to his helper, Pearson, that Pearson touch the angle iron, but Pearson thinking the angle iron was charged declined to follow the suggestion. About five minutes later Kohn left his work to get a drink, and while he was gone Pearson took the wires from the angle iron and laid them against the hacksaw, which in turn rested against the vise which held the conduit upon which Kohn was working, with the expectation that when Kohn returned and resumed his work he would receive a little shock. Pearson called the attention of two other workmen to the situation and suggested that they watch the result. When Kohn returned to the bench he took hold of the conduit for the purpose of going on with his work and received an electrical shock which killed him. The proof showed that this was the first time that these wires had ever been used for the purpose of perpetrating jokes. There is no proof tending to show that any foreman or superior of either Kohn or Pearson knew that the testing

wires had ever been used prior to the time of Kohn's death for the purpose of larking or joking.

The defendant *Nettie Kohn* made application to the *Industrial Commission* for compensation, and on August 17, 1917, was awarded $3,000. Plaintiff commenced an action to review the award of the *Commission* in the circuit court for Dane county. Upon hearing the court affirmed the award of the *Commission*, and from the judgment of affirmance the plaintiff appeals.

For the appellant there was a brief by *Williams & Stern* of Milwaukee, and oral argument by *B. F. Williams*.

For the respondent *Industrial Commission* there was a brief by the *Attorney General* and *J. E. Messerschmidt*, assistant attorney general, and oral argument by *Mr. Messerschmidt*.

The following opinion was filed May 21, 1918:

ROSENBERRY, J. Plaintiff's claim is that the circuit court erred in entering judgment affirming the award of the *Industrial Commission* for the reason that it clearly appears that the deceased, Joseph Kohn, was not "performing service growing out of and incidental to his employment" (sub. (2), sec. 2394—3, Stats.) at the time he sustained the injury which resulted in his death. It is the claim of the plaintiff that this case is ruled by *Federal R. M. Co. v. Havolic,* 162 Wis. 341, 156 N. W. 143. In that case the claimant was employed in a rubber tire factory, and his duties did not require him to use or come in contact with the compressed air system, and he knew that its use by employees to clean their clothes was forbidden. On quitting work for the day he took down the air hose and began to blow the dust from his clothing. A fellow workman, taking the hose from his hands, proceeded to clean the claimant's back, and as a joke held the nozzle against the claimant's body, resulting in a rupture of his in-

testines.    It was there held that the employee was not at the time of the accident performing service growing out of and incidental to his employment, and compensation was denied, and the court approved the principle laid down in *McNicol's Case,* 215 Mass. 497, 102 N. E. 697, to the effect that "the causative danger must be peculiar to the work and not common to the neighborhood.    It must be incidental to the character of the business and not independent of the relation of master and servant.    It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

As was pointed out by the trial court, "In the case at bar the duty of the decedent to his employer required him to use and to come in contact with the tools and wires which caused his death.    In the *Havolic Case* cited above the court pointed out that 'Had the claimant hurt himself in some way while he was handling the hose in the effort to remove the dust from his clothes, a different question would have been presented.' "

Here the deceased, in the usual course of his duty, was required to work upon the conduit at the place in question, and at the time of his death was engaged in the performance of his duties and had not in the slightest degree departed therefrom, and while so engaged he was instantly killed.    We think it must be said under such circumstances that the deceased was performing a service growing out of and incidental to his employment.    The accident was one that followed as a natural incident to the work performed.    The hazard was one to which the decedent would not have been equally exposed apart from his employment.    The danger was one peculiar to the work and not common to the neighborhood.    In this case if the deceased had not resumed his work he would not have been injured.    It was necessary for him in carrying on his work to do the act which resulted in his

death.    How can it be said under such circumstances that injuries sustained by the deceased did not grow out of and were not incidental to his employment?

The fact that the wires were adjusted by a fellow workman does not alter the situation in this case, even if he did it for the purpose of playing a joke on the deceased. *Knopp v. American C. & F. Co.* 186 Ill. App. 605. See note, L. R. A. 1916A, 232, 240. The deceased was not a party to the joke or larking of his fellow workman.

In the *Knopp Case* the court said:

"How can his rights be affected by the fact that the man who placed the can on the die says he did so 'just to have some fun.' So far as the proper continuance of the work was concerned, it was immaterial whether the obstruction was placed there by Novak for fun or was placed there by someone by mistake or came there through some accident. Had Knopp been engaged in joking with Novak or playing with him, and in carrying on their pranks Novak would put the can on the die and Knopp remove it, both entering into the spirit of the transaction in concert, it may be that appellee could not be held to have received his injury in the course of his employment. But in this case appellee took no part in the joking himself, but proceeded to clear the die of the obstruction upon it so that he could continue the work he was employed by appellant to do, and what he did was for the benefit of his employer."

Here the fact that Pearson adjusted the wires for the purpose of playing a joke on the deceased did not change the situation of the deceased and make outside of his employment that which otherwise grew out of and was incidental to his employment. So far as the deceased was concerned, he having no part in the so-called joke, it was immaterial whether the wires dropped accidentally or were placed in position by Pearson. The fact that deceased had suggested to Pearson that Pearson touch the angle iron does not affect the result. The claim is that he thereby invited retaliation. If that be

conceded it does not alter the fact that at the time he received the injury he was performing a service growing out of and incidental to his employment within the exact terms of the law.    If what the deceased did can properly be described as joking or larking, his participation therein had terminated and the joke was at an end some time before the injury, so far as he knew.    We think the circuit court properly affirmed the award.

*By the Court.*—Judgment affirmed.

OWEN, J., took no part.

A motion for a rehearing was denied, without costs, on July 27, 1918.