## SOUTHERN PAC. CO. v. SHEPPEARD.
### No. 1692.

District Court, S. D. Texas, Galveston Division.

July 12, 1939.

Armstrong, Cranford, Barker & Bedford, of Galveston, Tex., for libellant.

Clarence S. Eastham, of Houston, Tex., and Randolph Pierson, of Galveston, Tex., for interveners.

Douglas W. McGregor, U. S. Dist. Atty., and Eugene J. Wilson, Asst. U. S. Dist. Atty., both of Houston, Tex., for respondent.

KENNERLY, District Judge.

This is a suit in admiralty by Libellant under Section 921, Title 33 U.S.C.A., against G. Sheppeard, Deputy Commissioner of the Eighth Compensation District of the United States, to set aside an award made by such Commissioner under the Longshoremen's and Harbor Workers' Compensation Act (Sections 901 to 950, Title 33 U.S.C.A.) in the matter of the claim of Veola Gaffney, surviving wife of Bennie Gaffney, deceased, and of Robbie Lee Gaffney and Viree Gaffney, minor children of Veola Gaffney and Bennie Gaffney, for compensation under such Act, because of the death of Bennie Gaffney on or about October 26, 1938, claimed to have been caused by an injury received by him on October 18, 1938, while performing labor for the Libellant on the Steamship El Valle. Veola Gaffney, individually and as next friend of such minors, has by permission of the Court intervened.

Libellant under such Act (Section 921, Title 33 U.S.C.A.) prayed for a stay of payment of the amount of the award, and the hearing on the matter of stay was set for June 30, 1939. At such hearing, at which Proctors for Libellant, Proctors for the Deputy Commissioner, and Proctors for the Intervenors were present, it

was agreed in open Court that the case be forthwith submitted to the Court on the merits, and that pending the decision of the Court on the merits, the status quo of all matters should be preserved. The facts are substantially as follows:

(a) I adopt the Findings of Fact of the Commissioner, which I think are well supported by the evidence. The material portions thereof are as follows:—

"That on the 18th day of October, 1938, Bennie Gaffney was an employee in the service of Southern Pacific Company in Galveston in the State of Texas in the Eighth Compensation District, established under the provisions of the Longshoremen's and Harbor Workers' Compensation Act; and that on October 18, 1938, Southern Pacific Company was a qualified self-insurer as provided in Section 32 of the Longshoremen's and Harbor Workers' Compensation Act.

"That on the 18th day of October, 1938, Ernest Baugh, Bennie Gaffney, Walter Chassion, John Mattox, Wesley Holmes, and others were employed as longshoremen in the service of Southern Pacific Company on board the steamship EL VALLE, which said vessel was then in the harbor of Galveston, Texas, in navigable waters of the United States.

"That on the 18th day of October, 1938, after the work of stowing flour on board the steamship EL VALLE had been in progress for approximately one hour, a quarrel or verbal altercation arose between Bennie Gaffney, Wesley Holmes, and John Mattox in the following manner:

"Bennie Gaffney retired to the wing of the ship for the purpose of repairing or readjusting some part of his clothing. Wesley Holmes, thinking that Gaffney was taking too much time out, called to him to go back to work. Gaffney replied with a vile epithet, calling Holmes a filthy name. At that point John Mattox intervened on behalf of Wesley Holmes and said to Gaffney: 'Wesley is right; if you come on in and go to work, it makes the work easy.' Gaffney then began to curse Mattox—told him to do an indecent thing— and in return he received from Mattox a reply expressed in language of a like degree of repulsiveness. From then on Mattox and Gaffney continued to address each other in vile, repulsive, repugnant, and provocative language, each telling the other to kiss his anatomy on an indecent and humiliating part, even going so far as to include their womenfolk in their abusive verbal combat, and that too in uncomplimentary, indecent, vulgar, and obscene terms. The climax was finally reached, with Gaffney having the last word of the quarrel when he addressed Mattox in the following language: 'If it was left with me, I would kill a black son of a ——— every morning for breakfast.' By that time Gaffney had returned to his post of duty and was engaged in stowing 100-lb. sacks of flour—had helped to handle five or six sacks and was attempting to lift another sack—when John Mattox struck him twice on the head with a piece of timber, which caused him to sustain a severe personal injury; to-wit, fracture of the skull with intra-cranial hemorrhage.

"That the quarrel between Bennie Gaffney, Wesley Holmes, and John Mattox had its origin in and grew naturally out of the conditions of their employment, and the abusive language used by the participants, the exchange of vile epithets which culminated in the fatal blows dealt Bennie Gaffney at the hands of John Mattox, was but a continuation of that quarrel.

"That in the course of the quarrel or verbal altercation Bennie Gaffney did not engage John Mattox in physical combat and made no attempt to do so.

*"That on the 18th day of October, 1938, Bennie Gaffney sustained an accidental injury while in the furtherance of his employer's business, and at the time he received the fatal blows he was actually engaged in the work assigned him to do.*

*"That the injury Bennie Gaffney sustained on October 18, 1938, which caused his death on October 26, 1938, arose out of and in the course of his employment in the service of Southern Pacific Company on board the steamship EL VALLE in the harbor of Galveston, Texas.*

*"That on the 26th day of October, 1938, Bennie Gaffney died as a result of an accidental injury he sustained on October 18, 1938, while employed in the service of Southern Pacific Company on board the steamship EL VALLE at Galveston, Texas."*

(b) The Commissioner concluded that under the facts, Intervenors were entitled to an award, and awarded death compensation under the Act. Section 909, Title 33 U.S.C.A.

The sole complaint of Libellant is found in Paragraph 7 of its Libel, reading as follows:

"That the award is erroneous and not in accordance with law in each or any or all, singularly or collectively, for the following reasons, to-wit:

"(a) There is no evidence to support the finding of the Commissioner that the injury sustained on October 18, 1938, which caused his death on October 26, 1938, arose out of his employment in the service of the libellant, Southern Pacific Company.

"(b) The undisputed evidence shows that Bennie Gaffney's injury and death was caused by a blow on the head, struck by a co-employee, John Mattox, in a sudden rage, which Bennie Gaffney provoked by cursing and abusing the said John Mattox, and by using violently abusive language to the said John Mattox, concerning the said John Mattox and concerning the wife and mother of the said John Mattox, and did not arise out of his employment."

Subdivision (2) of Section 902, Title 33 U.S.C.A., which defines an injury under such Act, is as follows (italics mine): "The term 'injury' means *accidental injury or death arising out of and in the course of employment,* and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment."

The applicable portion of Section 903, Title 33, is as follows:

"(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law.

\* \* \* \* \* \*

"(b) No compensation shall be payable if the injury was occasioned solely by the intoxication of the employee or by the willful intention of the employee to injure or kill himself or another."

Section 920, of Title 33, is as follows:

"In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—

"(a) That the claim comes within the provisions of this chapter.

"(b) That sufficient notice of such claim has been given.

"(c) That the injury was not occasioned solely by the intoxication of the injured employee.

"(d) That the injury was not occasioned by the willful intention of the injured employee to injure or kill himself or another."

█ This Act is to be liberally construed. Baltimore & Philadelphia S. S. Co. v. Norton, 284 U.S. 408, 52 S.Ct. 187, 76 L. Ed. 366. If the fact findings of a Deputy Commissioner under such Act are supported by evidence, they are final. Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598. It is difficult to say whether the last three paragraphs (italicized) of the Commissioner's Findings of Fact are findings of fact or whether they are conclusions of law from facts. Whichever they may be, I think they are right and should be approved and upheld.

The facts show three employees (Bennie Gaffney, John Mattox, and Wesley Holmes) were involved in the quarrel which led up to the injury to Gaffney. The quarrel arose between Gaffney and Holmes because Gaffney left the work in hand longer than Holmes thought he should. Mattox took up Holmes' quarrel, saying to Gaffney, "Wesley (Holmes) is right; if you come on in and go to work, it makes the work easy." The quarrel was over work. At the climax of the quarrel when Mattox struck Gaffney, causing the injury and his subsequent death, Gaffney had several minutes before returned to work and was working.

█ I think it is the Law that if a quarrel over work leads one employee to strike another, the resulting injury arises out of employment within the meaning of the Act. Maryland Casualty Co. v. Cardillo, 69 App.D.C. 199, 99 F.2d 432, and other similar cases. Citing Early-Stratton Co. v. Rollison, 156 Tenn. 256, 300 S.W. 569, and referring to many other cases, the Circuit Court of Appeals of this (Fifth) Circuit,

in Aetna Life Ins. Co., v. Windham, 53 F. 2d 984, 985, a Workmen's Compensation Case where an employee was assaulted by a representative of his employer, uses this language: "In Texas (Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 28 A.L.R. 1402; Constitution Indemnity Co. v. Shytles (C.C.A.) 47 F.2d 441; Standard Accident Ins. Co. v. Stanaland (Tex.Civ.App.) 285 S.W. 878), as in other states having workmen's compensation laws, these statutes are liberally construed to give effect to the remedial purpose of the law. Though of course an injury is not compensable unless it results from a risk or hazard incident to the conduct of such work or business, it is uniformly held that those risks and hazards are incident to the business which arise in the course of it, and out of or in connection with its activities, even though the hazards are themselves unusual and not normally to be expected. In this view fights between workmen over the manner, or while in the course of, doing work, quarrels between the foreman and employees arising in the same way, and particularly disputes and difficulties arising over attempts to reprimand or discharge workmen for their conduct while about, or in the manner of doing, their employer's work, are covered and injuries resulting are compensable. Early-Stratton Co. v. Rollison, 156 Tenn. 256, 300 S.W. 569, 570."

Then too in Leonbruno v. Champlain Mills, 229 N.Y. 470, 128 N.E. 711, 13 A.L.R. 522, the injured man (an employee) was injured by an apple thrown in sport by another employee at another. Judge Cardozo there said: "We think with Kalisch, J., in Hulley v. Moosbrugger, 87 N.J.L. 103, 93 A. 79 [8 N.C.C.A. 283], that it was 'but natural to expect them to deport themselves as young men and boys, replete with the activities of life and health. For workmen of that age or even of maturer years to indulge in a moment's diversion from work to joke with or play a prank upon a fellow workman, is a matter of common knowledge to every one who employs labor.' The claimant was injured, not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions inseparable from factory life. The risks of such associations and conditions were risks of the employment. Thom v. Sinclair, supra [(1917) A.C. 127]; Redner v. H. C. Faber & Son, 223 N.Y. 379, 119 N.E. 842."

I think it is but a step farther to say that Gaffney was injured while and because he was employed as a longshoreman along with other negro longshoremen and associated with conditions inseparable from a longshoreman's life, and that the risks of such association were the risks of the employment.

The stay prayed for is denied, and the Award of the Deputy Commissioner is affirmed.