**HARTFORD ACCIDENT & INDEMNITY CO. v. CARDILLO et al.**

No. 7490.

United States Court of Appeals for the District of Columbia.

Decided March 11, 1940.

Writ of Certiorari Denied June 3, 1940.
See 60 S.Ct. 1100, 84 L.Ed. —.

Cornelius H. Doherty, of Washington, D. C., for appellant.

David A. Pine, George Rogers, Z. Lewis Dalby, and Charles T. Branham, all of Washington, D.C., for appellees.

Before STEPHENS, VINSON, and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The 'appeal is from an order of the District Court dismissing the complaint of the

Hartford Accident and Indemnity Company, employer's insurance carrier, against Frank A. Cardillo, deputy commissioner of the United States Employees' Compensation Commission, and Ray Bridges, to enjoin enforcement of a compensation order [1] favoring Bridges. The findings of fact, insofar as they are pertinent to the appeal, are as follows:

On October 10, 1938, the claimant Bridges, "while employed as a helper in the employer's [Sanitary Grocery Company, Inc.] produce warehouse and engaged in loading vegetables on the employer's truck, sustained personal injury resulting in his disability when a co-worker assaulted him suffering a laceration of the right eyebrow and a fracture of the right maxilla; * * * that the work performed by the claimant was supervised by a checker, Roy Downey; that in directing the claimant in the performance of his duties Downey addressed the claimant as 'Shorty'; that the claimant resented being called 'Shorty' and when Downey continued to so address the claimant, the latter called Downey a vile name; that Downey thereupon struck the claimant a blow on the right side of the face with his fist, inflicting the injuries above described; that the claimant did not strike or attempt to strike his superior, Downey; that Downey was the aggressor in the assault * * *." From these facts the deputy commissioner concluded "that the injury had its origin in the employment and that it arose out of and in the course of the said employment."

It is not contended that the injury did not occur "in the course of the employment," since it took place at the very time that Bridges was loading the truck for the employer. But the arguments of the plaintiff are directed against the finding that it "arose out of" the employment. Plaintiff asserts that the assault by Downey upon Bridges was caused by a purely personal quarrel, which had no relation to their work and, therefore, that the injury is not compensable. This is predicated on the facts as found and on other evidence not mentioned in the findings. That was to the effect that for about two months Downey and Bridges, while at work, had engaged in friendly banter concerning the respective merits of their watches, which was renewed on the morning of the injury. It is claimed that this led to the altercation and made it an entirely personal quarrel, unrelated to the work.

The statute creates a presumption "in the absence of substantial evidence to the contrary—(a) That the claim comes within the provisions of this chapter." [2] That the injury occurs in the course of the employment strengthens the presumption that it arises out of it. Moreover, "where there is doubt, it should be resolved in favor of the injured employee or his dependent family." [3] But it is unnecessary to rely on general presumptions as to the correctness of the findings.

We have held that where an employee's work exposes him "to a risk or hazard to which the general public is not exposed, and an injury results therefrom, the injury arises out of and in the course of the employment." [4] On this basis we allowed compensation where an employee suffered sunstroke on a hot day while doing heavy physical labor on the street. [5] The hazard of his work was clearly greater than that of other users of the street. Formerly such special risk was thought essential. [6] But in New Amsterdam Casualty Co. v. Hoage, 1932, 61 App.D.C. 306, 62 F.2d 468, 469, we dispensed with this requirement, sustaining an award where a solicitor for a newspaper was injured fatally merely by falling suddenly while crossing the street. There was no peculiar hazard, the cause of the fall being unexplained. Referring to the earlier rule requiring special risk, we said: "This doctrine, however, has since been abandoned. It is now held by the greater weight of authorities that, if an employee in the course of his employment has to pass along the public streets and thereby sustains an accident by reason of the risks incident to the streets, the acci-

---

[1] Pursuant to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., 44 Stat. 1424 (1927), 33 U.S.C.A. § 901 et seq., made applicable to the District by the Act of May 17, 1928, 45 Stat. 600, D.C.Code 1929, tit. 19, § 11, 33 U.S.C.A. § 901 note. Section 21 of the Compensation Act, 33 U.S.C. § 921, 33 U.S.C.A. § 921, permits the injunction proceeding brought in this case.

[2] 33 U.S.C. § 920(a), 33 U.S.C.A. § 920(a).

[3] Fidelity & Casualty Co. of N. Y. v. Burris, 1932, 61 App.D.C. 228, 230, 59 F.2d 1042, 1044.

[4] Ibid.

[5] Ibid.

[6] Cf. 61 App.D.C. 306, 62 F.2d 469.

dent 'arises out of' as well as 'in the course of' his employment." [7] In other words, work increases the employee's exposure to risks of the street whenever it requires his presence upon it, whether they are common to him and other users or peculiar to him alone. The street merely replaces the factory as the working environment. It is not the peculiar nature of the environment or of the risk, provided it is accidental, but the fact that the work brings the worker within the orbit of whatever dangers the environment affords that is important. It follows also that it is not necessary for the injury or the risk to be "natural," "normal," or predictable. When it is so, this fact, like "special danger," makes causal connection between work and injury more plain. But the very essence of compensation is that the injury be accidental, and that means unexpected.

■ In Hartford Accident & Indemnity Co. v. Hoage, 1936, 66 App.D.C. 160, 85 F. 2d 417, 418, these principles were extended to an unexplained attack by a stranger, taking place on the employer's premises. The claimant was a chef, at work in the kitchen when attacked with a knife by a man he had never seen previously and apparently did not see again after the assault. The opinion states: "We are of the opinion upon the undisputed facts in this case that the claimant's injury arose out of his employment, because the terms and conditions of his employment placed the claimant in the position wherein he was assaulted by the assailant and sustained the injuries from which he suffered. * * * It is true that claimant's injury was inflicted by a drunken or crazed stranger and was not such a danger as would ordinarily be apprehended by either the employer or the employee. Nevertheless, it was suffered by the claimant when at his place of duty, when upon the industrial premises of his employer, and while he was engaged at the work for which he was employed." [8]

The opinion relied specifically upon the New Amsterdam decision in ruling that no more is necessary than that the work subject the employee to a peril which comes from the fact that he is required to be in the place where it strikes when it does so. It is immaterial whether the place is the employer's premises or a street; whether the risk arises from physical features or human agencies connected with the place; whether it is a common occurrence or an extraordinary happening; one which threatens only employees at work or others also. That this is true appears also from the opinion's reliance upon cases from other jurisdictions. Among these are Entrocut v. Paramount, etc., Co., 1928, 222 App.Div. 844, 226 N.Y.S. 808, where a waiter in a restaurant was shot when a revolver being cleaned by a policeman waiting to be served went off accidentally or negligently, and Greenberg v. Voit, 1929, 250 N.Y. 543, 166 N.E. 318, where a janitor cleaning his employer's front steps was killed by gangsters who passed through the adjacent street shooting indiscriminately from an automobile. The last case adds the feature that volitional, criminal action may be a peril of the working environment. In Maryland Casualty Co. v. Cardillo, 1938, 69 App.D.C. 199, 99 F.2d 423, we followed out the logic of the New Amsterdam and Hartford decisions, in sustaining an award where an assistant cook in a restaurant was killed by a fellow worker (said to be of lower rank) in an altercation which arose because the latter resented the former's criticism of his manner of peeling potatoes. Referring to the Hartford case, we said: "A fortiori if, as here, a quarrel over work leads one employee to strike another, the resulting injury arises out of the employment." [9]

■ No common denominator for the cases can be found in the nature of the specific act or event which is the immediate cause of the injury. Whether it is "natural" or abnormal, occurs on or off the employer's premises, consists in the action of physical or human agencies and, if the latter, is reflex or volitional, lawful or unlawful, by one deranged or responsible, the common element is to be found in a broader and more fundamental principle. It is stated by Cardozo, J., in Leonbruno v. Champlain Silk Mills, 1920, 229 N.Y. 470, 128 N.E. 711, 13 A.L.R. 522, as follows: "The claimant was injured, not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions inseparable from factory life." Not the particular or peculiar character of the associations and conditions, but that the work creates and surrounds the employee with them is the basic thing.

■ Nor is it necessary, as these cases show, that the particular act or event which

[7] Ibid.
[8] 66 App.D.C. 160, 85 F.2d 418.
[9] 69 App.D.C. 201, 99 F.2d 434.

is the immediate cause of the injury be itself part of any work done for the employer by the claimant or others. Otherwise no award could be given for many injuries now compensated, such as those caused by stray bullets, unexplained falls, objects falling from outside the employer's premises and work,[10] many street risks, horseplay, most assaults and many other causes. "The risks of injury incurred in the crowded contacts of the factory through the acts of fellow workmen are not measured by the tendency of such acts to serve the master's business."[11] Not that the act is in the line of duty, or forwards the work, or creates special risk, but that the work brings the employee within its peril makes it, for purposes of compensation, "part of the work."

Recognition that this is so came more easily as to physical than as to human forces. As with street risks, the early disposition in cases of human action was to emphasize the particular act and its nature, except anomalously when it involved merely negligence of the claimant or fellow employees. The statutory abolition of common law defenses made easy recognition of the accidental character of negligent acts by the claimant and fellow servants. The extension to their accidental (i. e., nonculpable, but injurious) behavior was not difficult. So with that of strangers, including assault by deranged persons, and their negligence intruding into the working environment. But these extensions required a shift in the emphasis from the particular act and its tendency to forward the work to its part as a 'factor in the general working environment. The shift involved recognition that the environment includes associations as well as conditions, and that associations include the faults and derelictions of human beings as well as their virtues and obediences. Men do not discard their personal qualities when they go to work. Into the job they carry their intelligence, skill, habits of care and rectitude. Just as inevitably they take along also their tendencies to carelessness and camaraderie, as well as emotional make-up. In bringing men together, work brings these qualities together, causes frictions between them, creates occasions for lapses into carelessness, and for fun-making and emotional flare-up. Work could not go on if men became automatons repressed in every nat-

ural expression. "Old Man River" is a part of loading steamboats. These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment.

But resistance to application of the broad and basic principle has been most obstinate perhaps where the particular act immediately causing injury involves responsible volition by the claimant or others. The extreme instances are those containing an element of illegality or criminality. The horseplay and assault cases are illustrative. Confusion and conflict still reign in these realms.

■ Several factors have sustained the resistance. One is the hangover from common law conceptions of profiting by one's own wrong. But this applies as well, in logic, to contributory or one's own exclusive negligence. Another was the now thoroughly dissipated notion that voluntary responsible action cannot be accidental. The volitional character of the act also raised a supposed analogy to "independent, intervening agency" in tort causation. There was, further, an assumed essential opposition between "personal" acts and those of an "official" (i. e., related to the work) character. An assault necessarily involves emotional make-up and disturbance. In a broad sense nothing is more personal. Quarreling is always so. This accounts for the early disposition to regard all injuries from wilful assault as not compensable,[12] a view also necessarily dictated, except rarely when duty requires fighting, if tendency of the particular act to forward the work or direct connection with line of duty are the tests of liability. But that view now is repudiated universally in recognition that work causes quarrels and fights. That they involve volition and fault, have no tendency to forward the work, and are permeated with the personal element of anger no longer suffices to break the causal connection between work and injury. Emotional disturbance is not of itself an "independent, intervening cause" or a "departure from the work."

■ But differences remain as to when work causes quarrels. So long as the claimant is merely the victim, not a participant, it makes little difference whether the

---

[10] Baudassi v. Molla, 1922, 200 App. Div. 266, 192 N.Y.S. 776.

[11] Leonbruno v. Champlain Silk Mills, cited supra, 128 N.E. 712 (loc. cit.).

[12] Note L.R.A.1916A, 309.

fighting is by fellow employees or strangers to the work or what is the immediate occasion for the dispute. [13] The same is true in horseplay. [14] It is sufficient that the work brings the claimant within the range of peril by requiring his presence there when it strikes. But conflict becomes acute when the claimant participates. There are two lines of division, which partially overlap. One is concerned with whether the claimant is the aggressor. [15] Another turns on whether the dispute arises immediately over the work or about something else. One view limits compensable causation to quarrels relating directly to the work. [16] It disconnects the precipitating incident from the working environment, though that alone may have produced it. So isolated, its immediate relevance to the work becomes the determinative consideration. Momentary lapses from duty, as in horseplay, kidding and teasing, which often explode into bursts of temper and fighting become "departures from the work," "independent, intervening causes" or "purely personal matters." Their immediate irrelevance overcomes and nullifies the part played by the work in bringing the men together and creating the occasion for the lapse or outburst. The other view rejects the test of immediate relevancy of the culminating incident. [17] That is regarded, not

[13] Exposure to risk by being at work rather than relevancy of the immediate cause of the injury to the work is clearly the basis of liability. Inquiry is not meticulous into whether the dispute causing the fighting is over the work or about something else. Baker v. Horicon School Board, 1935, 245 App.Div. 879, 282 N.Y.S. 150; Smith v. State Industrial Commission, 1938, 182 Okl. 433, 78 P.2d 288; cf. Anderson v. Security Bldg. Co., 1924, 100 Conn. 373, 123 A. 843, 40 A.L.R. 119; Ferguson v. Cady-McFarland Gravel Co., 1924, 156 La. 871, 101 So. 248; McNicol's Case, 1913, 215 Mass. 497, 102 N.E. 697, L.R.A.1916A, 306; Dodson v. F. W. Woolworth Co., 1929, 118 Neb. 276, 224 N.W. 289; Barone v. Brambach Piano Co., 1917, 101 Misc. 669, 167 N.Y.S. 933; Kaiser Lumber Co. v. Industrial Commission, 1923, 181 Wis. 513, 195 N.W. 329.

[14] Kansas City Fibre Box Co. v. Connell, 8 Cir., 1925, 5 F.2d 398, 43 A.L.R. 478; General Accident, Fire & Life Assur. Corp. v. Crowell, 5 Cir., 1935, 76 F.2d 341, 342; West Penn Sand & Gravel Co. v. Norton, 3 Cir., 1938, 95 F.2d 498; Pekin Cooperage Co. v. Industrial Bd., 1917, 277 Ill. 53, 115 N.E. 128; Phil Hollenbach Co. v. Hollenbach, 1918, 181 Ky. 262, 204 S.W. 152, 13 A.L.R. 524; Verschleiser v. Stern, 1920, 229 N.Y. 192, 128 N.E. 126; Leonbruno v. Champlain Silk Mills, 1920, 229 N.Y. 470, 128 N.E. 711, 13 A.L.R. 522; Industrial Commission v. Weigandt, 1921, 102 Ohio St. 1, 130 N.E. 38; Willis v. State Industrial Commission, 1920, 78 Okl. 216, 190 P. 92; Cassell v. United States Fid. & Guar. Co., 1926, 115 Tex. 371, 283 S.W. 127, 46 A.L.R. 1137; Newport Hydrocarbon Co. v. Industrial Commission, 1918, 167 Wis. 630, 167 N.W. 749; Notes 1921, 13 A.L.R. 540; 1922, 20 A.L.R. 882; 1925, 36 A.L.R. 1469; 1926, 43 A.L.R. 492; 1927, 46 A.L.R. 1150. But cf. Stark v. State Industrial Accident Commission, 1922, 103 Or. 80, 204 P. 151.

[15] Some courts regard aggression in physical attack as in itself a departure from the work. Cf. Globe Indemnity Co. v. Industrial Accident Commission, 1934, 2 Cal.2d 8, 37 P.2d 1039; Gray's Case, 1923, 123 Me. 86, 121 A. 556; Plouffe v. American Hard Rubber Co., 1925, 211 App.Div. 298, 207 N.Y.S. 373; Curran v. Vang Const. Co., 1926, 286 Pa. 245, 133 A. 261. Others do not regard it so, if the antecedent quarrel arises over the work, or unless the aggression is of the type specified in the statutory exceptions. Conrad v. Cook-Lewis Foundry Co., 1930, 198 N.C. 723, 153 S.E. 266; Meucci v. Gallatin Coal Co., 1924, 279 Pa. 184, 123 A. 766; Travelers' Ins. Co. v. Culpepper, Tex.Civ.App., 1935, 82 S.W. 2d 1054; cf. Stillwagon v. Callan Bros., 1918, 183 App.Div. 141, 170 N.Y.S. 677.

[16] Cf. McNicol's Case, 1913, 215 Mass. 497, 102 N.E. 697, L.R.A.1916A, 306; Chicago v. Industrial Commission, 1920, 292 Ill. 406, 127 N.E. 49, 15 A.L.R. 586; see Notes, 1921, 15 A.L.R. 588; 1922, 21 A.L.R. 758; 1924, 29 A.L.R. 437; 1926, 40 A.L.R. 1122; 1931, 72 A.L.R. 110; 1938, 112 A.L.R. 1258.

[17] Polar Ice & Fuel Co. v. Mulray, 1918, 67 Ind.App. 270, 119 N.E. 149; Keyhea v. Woodard-Walker Lumber Co., La.App., 1933, 147 So. 830; Ferguson v. Cady-McFarland Gravel Co., 1924, 156 La. 871, 101 So. 248; Texas Employers' Ins. Ass'n v. Sparrow, Tex.Civ.App., 1937, 109 S.W.2d 1137; cf. Baker v. Horicon School Bd., 1935, 245 App.Div. 879, 282 N.Y.S. 150; Kline v. Pennsylvania R. Co., 1931, 101 Pa.Super. 539. See also Southern Pacific Co. v. Sheppeard, D.C.S.D.Tex., 1939, 29 F.Supp. 376 at page 379. Acceptance of this view is qualified in many cases by limiting it to situations in which the claimant is not the aggressor. Except for the effect of applicable express statutory excep-

as an isolated event, but as part and parcel of the working environment, whether related directly to the job or to something which is a by-product of the association. This view recognizes that work places men under strains and fatigue from human and mechanical impacts, creating frictions which explode in myriads of ways, only some of which are immediately relevant to their tasks. Personal animosities are created by working together on the assembly line or in traffic. Others initiated outside the job are magnified to the breaking point by its compelled contacts. No worker is immune to these pressures and impacts upon temperament. They accumulate and explode over incidents trivial and important, personal and official. But the explosion point is merely the culmination of the antecedent pressures. That it is not relevant to the immediate task, involves a lapse from duty, or contains an element of volition or illegality does not disconnect it from them nor nullify their causal effect in producing its injurious consequences. Any other view would reintroduce the conceptions of contributory fault, action in the line of duty, nonaccidental character of voluntary conduct, and independent, intervening cause as applied in tort law,[18] which it was the purpose of the statute to discard. It would require the application of different basic tests of liability for injuries caused by volitional conduct of the claimant and those resulting from negligent action, mechanical causes and the volitional activities of others.

The limitation, of course, is that the accumulated pressures must be attributable in substantial part to the working environment. This implies that their causal effect shall not be overpowered and nullified by influences originating entirely outside the working relation and not substantially magnified by it. Whether such influences have annulling effect upon those of the environment ordinarily is the crucial issue. The difference generally is as to the applicable standard. It is not, as is frequently assumed, the law of "independent, intervening agency" applied in tort cases.[19] It cannot be prescribed in meticulous detail, but is set forth in the statute, not only in the broad presumptions created in favor of compensability, but more explicitly in the provision by which Congress has expressed clearly its intention concerning the kinds of acts which bar recovery when done by the claimant. The provision is: "No compensation shall be payable if the injury was occasioned *solely* by the intoxication of the employee or by *the willful intention of the employee to injure or kill himself or another."*[20] (Italics supplied)

This provision, reinforced by the statutory presumptions and the Act's fundamental policy in departing from fault as the basis of liability and of defense, except as specified, is inconsistent with any notion that recovery is barred by misconduct which amounts to no more than temporary lapse from duty, conduct immediately irrelevant to the job, contributory negligence, fault, illegality, etc., unless it amounts to the kind and degree of misconduct prescribed in definite terms by the Act. It is entirely inconsistent with reading into the statute the law of tort causation and defense, where liability is predicated on fault and nullified by contributory fault.[21] We are committed by the statutes and our previous decisions against the test of immediate relevancy of the precipitating act to the task in hand.

It follows that the judgment must be affirmed. Taking full account not only of the findings but of all the evidence, it is clear that the entire sequence of incidents

---

tions, there is at least an apparent logical inconsistency in applying it to acts of strangers to the work, as is widely done, or of fellow employees, and not doing so to the act of the claimant. Natural repulsion toward rewarding intentional misconduct accounts largely for the difference, though it ignores the fact that one purpose of the statute is sustenance of the misbehaving employee's family during his disability and their dependence is not the less because the misconduct is his rather than another's. It appears, with the exception stated, also to disregard the fact that many statutes clearly contemplate compensation for in-

juries caused by misconduct of the claimant which goes beyond negligence, contributory or exclusive. Cf. text infra circa note 21.

[18] Cf. text infra circa note 21.

[19] Ibid.

[20] Act of March 4, 1927, c. 509, § 3(b), 44 Stat. 1426, 33 U.S.C. c. 18, § 903(b), 33 U.S.C.A. § 903(b).

[21] Theories of legal cause necessarily are affected by the substantive conceptions controlling liability and defense. These distinguish "legal cause" from "cause in fact." Cf. Morris, On the Teaching of Legal Cause (1939) 39 Col. L.Rev. 1087.

occurred not only while the claimant and his assailant were at work, but as a natural and normal product of working together. The record shows no private or personal relations between them. The discussion about watches, if that were material as contended by appellant, was carried on in the normal intercourse of employee with employee. It was not relevant to any particular duty; neither was it an interruption or a departure from the work, much less an "independent, intervening agency." If "personal," it was one of those personal things which employees constantly do, not only while, but because they are working together. All this may be said also concerning the use of the respective appellations of "Shorty" and "Skinny," both in the banter and in the official acts of giving and receiving orders. The claimant may have been at fault in resenting his superior's ridicule, expressed perhaps as much in tone as in language, by repeated use of the diminutive nickname, both personally and officially. His remonstrance should have ended the practice. When it did not, the fighting word sprang to the lips, and the superior employee responded with his fist. Claimant may have been at fault, but he was the aggressor neither in the banter nor in the physical encounter. We do not put the case on the narrow ground that Downey was Bridges' superior [22] and as such owed him the duty not to belittle him or ridicule his physical stature. Fault there was on both sides, the graver perhaps in Downey for the fact that he was the superior and knew not when to stop. But compensability in these circumstances is not a matter of comparative fault. The entire sequence of events arose out of the fact that the work of the participants brought them together and created the relations and conditions which resulted in the clash. Nothing in the record shows that Bridges was intoxicated or had any intention to injure himself or another. He was guilty at most of contributory fault. But it was not sufficient, within either the statutory language or the principle of our previous decisions, to constitute a departure from the work, a matter *purely* personal, or a disconnecting intervening agency.

Fazio v. Cardillo [23] is distinguishable in the fact that claimant there was the aggressor in the physical assault; and also in the fact that the deputy commissioner, who found that the injury in the present case arose out of the employment, found that the injury in the Fazio case did not arise out of the employment. We held there that the deputy commissioner's finding was supported by substantial evidence. We hold the same thing here.

The judgment is affirmed.

STEPHENS, Associate Justice, concurs in the result.

[22] Cf. the A.L.R. annotations cited supra note 16.

[23] — App.D.C. —, 109 F.2d 835 (decided January 8, 1940).