## SHERBY v. ROYAL HAWAIIAN, Inc., et al.

Industrial Commission.
September 5, 1952.

William K. Chester, West Palm Beach, for claimant.

James C. Paine of Earnest, Lewis, Smith & Jones, West Palm Beach, for the employer and insurance carrier.

JAMES R. KNOTT, Deputy Commissioner.

On March 3, 1952 claimant Merrill M. Sherby was injured in an altercation with one D. R. Cuseo on the premises of a hotel operated by Royal Hawaiian, Inc., in Palm Beach, where they both were employed.

Sherby's claim for the benefits of the Workmen's Compensation Act is controverted by the insurance carrier for his

employer on the ground that his injury did not arise out of and in the course of his employment. More precisely stated, the issues are (1) whether the altercation involved a purely personal dispute unconnected with claimant's work, (2) whether he was the aggressor, and, if so, (3) whether that fact should bar him from recovery.

The evidence showed that claimant, who was assistant manager of the hotel, and Cuseo, who was employed there as a lifeguard and swimming instructor, had an argument while seated together in the coffee shop of the hotel, shortly before the incident involving claimant's injury. The claimant testified that he remonstrated strongly with Cuseo for being rude to the waitress serving them, one Inez Riedel; that in another section of the premises, shortly afterwards, he undertook to relay to Cuseo instructions from the hotel manager forbidding Cuseo to take his meals in the section of the coffee shop which was reserved for guests, whereupon Cuseo, without warning, struck him and kicked him.

Cuseo testified that the claimant had previously exhibited a rather hostile attitude toward him in undertaking to supervise his work; that at the time of the incident in the coffee shop, claimant simply took exception to the fact that Cuseo was ordering a dessert from Miss Riedel, and that no charge of rudeness was or could have been involved, as he and Miss Riedel were friendly toward each other; and shortly after that occurrence, Miss Riedel told him, Cuseo, that the claimant had given instructions forbidding him to eat in the coffee shop; that he then approached claimant and asked him the reason for the order, whereupon claimant raised his right hand menacingly, with the result that Cuseo struck him quickly two or three times. Miss Riedel testified in corroboration of Cuseo's version of the circumstances, stating that she observed the two men "having words" when claimant raised his arm back with clenched fist, as if to strike Cuseo, and Cuseo hit him. Previously, at the time of the coffee shop incident, she had overheard claimant say to Cuseo that he, claimant, could "take care" of himself.

It will be seen that the testimony establishes the existence of a causal connection between claimant's employment and the subject-matter of the dispute leading to Cuseo's assault upon him.

A consideration of the "aggressor" question involves an interpretation of the following provisions of the Act as set forth in Florida Statutes 1951:

> Sec. 440.09(3). No compensation shall be payable if the injury was occasioned primarily . . . . by the willful intention of the employee to injure or kill himself or another . . .

> Sec. 440.26. In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary— * * * That the injury was not occasioned by the willful intention of the injured employee to injure or kill himself or another.

In the case of Florida Forest & Park Service v. Strickland, 18 So. 2d 251, our Supreme Court held, by plain implication, that unless the conduct of an employee claiming compensation constituted him an aggressor within the meaning of the provision quoted above, he would not be barred from compensation. In allowing compensation to the claimant, the court stated as follows:

> It appears from the evidence adduced before the deputy commissioner that the claimant was injured during an altercation with one Buck Slaughter, in a forest tower high above the ground. At the time, Strickland was employed as a fire tower watchman for the Florida Forest & Park Service. Slaughter was employed as a forest ranger by Burton-Schwartz Cypress Company, working in conjunction with Florida Forest & Park Service in protecting the timber holdings of the Company. Strickland had been called into the fire tower by his immediate superior, Carl Franklin McDougal, to meet with Slaughter for the purpose of talking over some disagreement between the parties regarding the report of a fire made the day before by Strickland. The conference terminated with an exchange of pistol shots between Strickland and Slaughter. Slaughter was killed; Strickland was wounded.

> The right to compensation to the claimant, Strickland, turns on the question of who was the aggressor in the difficulty. If Strickland made an assault upon Slaughter with the willful intention to injure or kill him, then he may not recover compensation against his employer. Sec. 440.09, Florida Statutes 1941. On the other hand if Strickland shot in necessary self-defense after an overt act of aggression against him by Slaughter, it is conceded by counsel that recovery may be had by Strickland.

> The only witnesses offered at the hearing before the deputy commissioner were McDougal and Strickland. Their testimony was in conflict. McDougal, the bystander, testified that shots were exchanged rapidly between the parties, the first shot being fired by Strickland. But McDougal was unable to say which of the participants first pulled

his gun upon the other. The testimony of Strickland is that Slaughter first pulled his gun, saying that he was going to shoot, whereupon claimant retaliated in necessary self-defense. Strickland likewise testified, without objection being interposed thereto, that he was subsequently indicted and tried for the murder of Buck Slaughter and was exonerated and acquitted by a trial jury. On this set of facts the deputy commissioner found that the claimant had failed to establish his right to compensation as against the defense interposed by the employer. When the case came to the circuit court as an original judicial controversy, the circuit judge reversed the holding of the deputy commissioner and entered a judgment for the claimant. That judgment is here on appeal.

> In the absence of substantial evidence to the contrary, the presumption is that the claim comes within the provisions of the Workmen's Compensation Law and that injury was not occasioned by the willful intention of the injured employee to injure or kill another. Sec. 440.26, Florida Statutes 1951.

The rule adopted by our Supreme Court accords with that followed in the case of Hartford Accident & Indemnity Co. v. Cardillo, 72 App. D.C. 52, 112 F. 2d 11, where the maxim *expressio unius exclusio alterius* was applied to a similar statute. The court held that by specifying what kinds of misconduct were non-compensable, the statute implied that lesser misconduct, such as "fighting words," should not bar compensation, and said:

> This provision, reinforced by the statutory presumptions and the Act's fundamental policy in departing from fault as the basis of liability and of defense, except as specified, is inconsistent with any notion that recovery is barred by misconduct which amounts to no more than temporary lapse from duty, conduct immediately irrelevant to the job, contributory negligence, fault, illegality, etc., unless it amounts to the kind and degree of misconduct prescribed in definite terms by the Act.

Under the principles followed by the Florida Supreme Court in the Strickland case, supra, the testimony as to claimant's conduct must be weighed to determine whether he willfully intended to injure Cuseo. The single evidence of such intention lay in the testimony that he raised his hand, or fist, menacingly. Such an act under different circumstances might be interpreted as "substantial evidence" of intention to injure, within the meaning of section 440.26, quoted above. But a comparison, alone, of the physical and other characteristics of the two men in this case, both of whom appeared before the deputy commissioner as witnesses, tends to weaken or destroy such a conclu-

sion—Cuseo is a tall young man of strong athletic build, while the claimant, a man approaching middle age, is of portly figure obviously not designed by nature for the risks attached to a wanton challenging of athletic instructors, and still less for enforcing a purpose to injure them. His reported previous statement to Cuseo that he could "take care" of himself implied a belief, however mistaken, in his ability to defend himself, rather than a threat to Cuseo's safety.

In construing the phrase "willful intent to injure," the authorities generally hold that those words—"obviously contemplate behavior of greater gravity and culpability than the sort of thing that has sometimes qualified as aggression. Profanity, scuffling, shoving, rough handling or other physical force not designed to inflict real injury do not seem to satisfy this stern designation." Larson's Workmen's Compensation Law, vol. 1, sec. 11.15(d). In further discussing the subject, the cited authority states as follows:

> The adjective "willful" rules out acts which are instinctive or impulsive, so that even violent blows might fail to give rise to this defense if they were spontaneous and unpremeditated. . . .

> Since the defense is an affirmative one, the burden of proving it is, of course, upon the defendant, and it will be presumed that the injury was not so caused until the opposite is established. . . . The action must be "deliberate or premeditated" . . . and must be of "a grave and aggravated character". The Massachusetts court adds that there must be "an easily perceptible danger of substantial bodily harm or death and a great chance that such harm will result."

The evidence fails to establish that claimant's injury was occasioned primarily by his willful intention to injure another. It must be held, therefore, that his injury was compensable as arising out of and in the course of his said employment, and that he is entitled to an award of benefits as hereinafter set forth.

The evidence shows that claimant was temporarily totally disabled by his injury for a period of 45 days after its occurrence. It is therefore ordered that the insurance carrier pay— (1) to the claimant compensation at $35 weekly for the 45-day period, less the 4-day waiting period provided by law, (2) the expenses of medical treatment and hospitalization necessitated by claimant's injury, and (3) to William K. Chester, Esq., the sum of $120 for legal services on claimant's behalf.