SOLOMON MARTIN, PETITIONER-RESPONDENT, v. J. LICHT-MAN & SONS, RESPONDENT-APPELLANT.

Argued March 17, 1964—Decided April 6, 1964.

82

On appeal from a judgment of the Superior Court, Appellate Division, where the following opinion was filed.

"Martin was awarded workmen's compensation by the Division, the County Court reversed, and Martin appeals.

Martin was having his lunch in a room in the Lichtman plant customarily used by its employees for that purpose. There were about 18 employees in the room, and Martin was seated between Bradford and Taylor. Martin interpreted a remark made by Bradford to Taylor as meaning that Bradford had a job in addition to his employment with Lichtman, and he said to Bradford 'You got two jobs? How can you take care of both jobs?' Bradford did not answer but went to his locker, took out a bottle of soda water, returned to his seat alongside Martin and, a minute or two later and still without saying anything, struck Martin with the bottle, causing the injuries for which Martin seeks compensation. There had been no previous words or difficulties between Bradford and Martin. There is nothing in the record to indicate that they saw each other outside of working hours.

"The County Court said 'Petitioner's observation or inquiry brought no verbal response. There was an hiatus of some minutes, then the attack. Conceding that the assailant did take umbrage at petitioner's query, and that a period of silent fermentation ensued which produced the attack, how can it be said that the employment had anything to do with it? Appar-

ently, the same query, had it been made off the job, would have produced the same violent result.'

"That may be true, but the fact of the matter is that it was on the job that Martin ate and talked with Bradford, and Bradford became enraged and struck him. But for the fact that Martin was on the job, he would have had no contact with Bradford and would not have been assaulted by him. As the court said in *Sanders v. Jarka Corp.*, 1 *N. J.* 36, 41 (1948), 'The employment * * * was the cause in the sense that, but for the employment, the accident would not have happened. * * *'

▆▆ Lichtman argues that an assault is compensable if it grows out of a quarrel whose subject matter is related to the work, but not when the assault is due only to personal animosity, even though it arose out of the enforced contact of the factory. We hold that there is no longer room for such a distinction under our cases, and that 'even if the subject of the dispute is unrelated to the work, the assault is compensable if "the work of the participants brought them together and created the relations and conditions which resulted in the clash." ' 1 *Larson, Workmen's Compensation Law, p.* 130 (1952).

"In *Crotty v. Driver Harris Co.*, 49 *N. J. Super.* 60, 72 (1958), we said:

'The "positional" or "but-for" test has been adopted in this jurisdiction. *Sanders v. Jarka Corp.*, * * * 1 *N. J.* [36], at *page* 41; *Gargiulo v. Gargiulo*, * * * 13 *N. J.* [8], at *page* 13; *Howard v. Harwood's Restaurant Co.*, * * * 25 *N. J.* [72], at *page* 82 *et seq.*, where the doctrine is fully explored by Justice Burling. See, also, *Larson, "Legal Aspects of Causation in Workmen's Compensation,"* 8 *Rutgers L. Rev.* 423, 427. As observed in the *Howard* cases: "* * * 'But-for' connotes a standard of reasonable probability. Thus stated, the question is whether it is more probably true than not that the injury would have occurred during the time and place of employment rather than elsewhere. * * *" (25 *N. J.*, at *page* 83) * * * Under the "but-for" test, assaults by co-workers are compensable as long as they are not motivated by personal vengeance stemming from *contact with the employee outside of the employment*. *Howard v. Harwood's Restaurant Co.* * * * 25 *N. J.*, at *page* 84; *Larson, ap. cit.*, § 11.16(c), 11.21, *pp.* 135, 136.' (Emphasis ours)

84

"In *Leonbruno v. Champlain Silk Mills*, 229 *N. Y.* 470, 128 *N. E.* 711, 13 *A. L. R.* 522 (*Ct. App.* 1920), Judge Cardozo said: 'The claimant was injured not merely while he was in a factory but because he was in a factory, in touch with associations and conditions inseparable from factory life.' And see *Larson, supra, p.* 132.

The assault upon Martin was not motivated by personal vengeance stemming from contact with Bradford outside of the employment, nor did it arise from a purely private relationship entered into by them during the course of their employment, as, for example, if they had embarked on a joint enterprise on the side and fought over it during working hours. *Cf. Larson, op. cit., supra, p.* 139. When friction and strain arises between employees because of the enforced contact resulting from the employment and leads to an unjustified assault, the victim's injuries are compensable. Martin's injuries resulted from such an assault. *Crotty v. Driver Harris Co., supra; Diaz v. Newark Industrial Spraying Co.,* 35 *N. J.* 588, 591 (1961) ; *Larson, op. cit., supra,* §§ 11.16(a) (c), 11.22. *Cf. Lester v. Elliott Bros. Trucking Co.,* 18 *N. J.* 434 (1955).

"In *Hartford Accident & Indemnity Co. v. Cardillo,* 72 *App. D. C.* 52, 112 *F.* 2*d* 11, 15 (*C. A. D. C.* 1940), *cert.* denied 310 *U. S.* 649, 60 *S. Ct.* 1100, 84 *L. Ed.* 1415 (1940), cited with approval in *Diaz v. Newark Industrial Spraying, Inc., supra,* at 35 *N. J.* 591, the court said:

'The risks of injury incurred in the crowded contacts of the factory through the acts of fellow workmen are not measured by the tendency of such acts to serve the master's business. * * *
* * * The shift [to compensability] involved recognition that the environment includes associations as well as conditions, and that associations include the faults and derelictions of human beings as well as their virtues and obediences. Men do not discard their personal qualities when they go to work. Into the job they carry their intelligence, skill, habits of care and rectitude. Just as inevitably they take along also their tendencies to carelessness and camaraderie, as well as emotional makeup. In bringing men together, work brings these qualities together, causes frictions between them, creates occasions for lapses into carelessness, and for fun-making and emotional flare-up. * * * These expressions of human nature are incidents

inseparable from working together. They involve risks of injury and these risks are inherent in the working environment. * * *.' (112 *F. 2d,* at *p.* 15)

"After reviewing the conflicting views as to the conpensability of injuries arising out of on-the-job quarrels, Justice Rutledge said that he considered the better view to be the one which:

"* * * rejects the test of immediate relevancy of the culminating incident. That is regarded, not as an isolated event, but as part and parcel of the working environment, whether related directly to the job or to something which is a by-product of the associations. This view recognizes that work places men under strains and fatigue from human and mechanical impacts, creating frictions which explode in myriads of ways, only some of which are immediately relevant to their tasks. Personal animosities are created by working together on the assembly line or in traffic * * * No worker is immune to these pressures and impacts upon temperament. They accumulate and explode over incidents trivial and important, personal and official. But the explosion point is merely the culmination of the antecedent pressures. That it is not relevant to the immediate task, involves a lapse from duty, or contains an element of volition or illegality does not disconnect it from them nor nullify their causal effect in producing its injurious consequences. Any other view would reintroduce the conceptions of contributory fault, action in the line of duty, non-accidental character of voluntary conduct, and independent, intervening cause as applied in tort law, which it was the purpose of the statute to discard. * * *.' (112 *F. 2d,* at *pp.* 16–17)

"Commenting favorably upon the rule that the friction and strain of employment itself makes a resulting 'neutral' assault work-connected, Larson says (*p.* 131): '* * * men carry their personal qualities, weaknesses, emotions and tempers with them to work, and the risk of shattered human tempers is comparable to the risk of overstrained machinery.' When his book was published, in 1952, Larson anticipated that New Jersey would follow the 'friction and strain' rule, for he said (*p.* 136), after quoting from *Sanders v. Jarka Corporation,* *supra:*

'While this latter case involves a work dispute, the reasoning is significant, since any jurisdiction which accepts the but-for or positional doctrine generally would have no difficulty applying it to disputes induced by the irritations of compulsory human contact and so reaching the same result as that in the *Hartford Accident* case.'

"And see Larson's definition and discussion of 'neutral' risks, in § 7.30 of his book, cited and followed in *Howard v. Harwood's Restaurant Co., supra*, 25 *N. J.*, at *p.* 84.

Lichtman points out that in *DeNardis v. Stevens Construction Co.*, 72 *N. J. Super.* 395 (1962), aff'd 38 *N. J.* 300 (1962), we stressed the fact that DeNardis was struck with a tool supplied by the employer and that the attack was triggered by the injured workman's statement to the attacker that he had no time to argue and had to get back to work. This, argues Lichtman, proves that our law still requires some such work-connection. We disagree. Those facts were mentioned in the *DeNardis* case because they existed in that case, but that does not establish that similar facts must always be present to justify compensation. As was pointed out in the *Crotty* case, *supra*, we have adopted the 'but-for' and 'positional risk' doctrines. Since then, our 'horseplay' cases have recognized the right not only of the victim but of the aggressor to compensation. *Diaz v. Newark Industrial Spraying, Inc., supra*. We see no basis for distinguishing an angry assault, such as here, from a playful one (such as in *Diaz*), a murderous one (such as in *Crotty*), or an insane one (such as in *Howard*). See also *McKenzie v. Brixite Mfg. Co.*, 34 *N. J.* 1 (1961).

"For the foregoing reasons, the judgment of the County Court is reversed and the judgment of the Division is reinstated."

*Mr. Isidor Kalisch* argued the cause for appellant.

*Mr. Edward J. Abromson* argued the cause for respondent.

PER CURIAM. The judgment is affirmed for the reasons expressed in the opinion of Judge Gaulkin in the Appellate Division.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR and SCHETTINO—5.

*For reversal*—Justices HALL and HANEMAN—2.